**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

BRANDY VARNER,
MICHAEL LINK,
ROBERT CORWIN, DONALD
SHEPHERD, BOBBI SHEPHERD,
MICHAEL ACOSTA, and ANN FIELD,
and all others similarly situated,

      Plaintiffs,

DOMETIC CORPORATION, a Delaware       **CLASS ACTION COMPLAINT**
Corporation,       **JURY TRIAL DEMAND**

      Defendant.

_____/

**CLASS ACTION COMPLAINT**

**I.   INTRODUCTION**

1.     This class action challenges the deceptive and misleading business practices of Defendant Dometic Corporation (referred to herein as "Defendant" or "Dometic") in connection with its designing, manufacturing, marketing, sale and otherwise placing into the stream of commerce several models of gas absorption refrigerators for use in recreational vehicles and boats (collectively referred to herein as "recreational vehicles" or "RV's"), all of which share a dangerous defect and design, while concealing and failing to disclose those material facts to the Class. The Class, defined more fully below, includes all persons, who during the Class Period, purchased and/or owned a gas absorption refrigerator manufactured by Defendant (further defined below as the "Defective Gas Absorption Refrigerators") in the states of Florida, California, Minnesota, Georgia, and North Carolina.

2.      South Florida is at the epicenter of Dometic's unlawful and deceptive conduct regarding the sale of this defective product as it relates to marine sales. According to Dometic's own website (www.dometicgroup.com), the "Sales Companies" identified for the "USA" are solely "Dometic Corporation, 2000 N. Andrews Avenue Ext., FL 33069, Pompano Beach, Florida USA."  The deceptive and misleading conduct, decisions and omissions challenged herein emanated from Defendant's corporate offices in Pompano Beach, negatively affecting Class members not only in Florida, but nationwide.  Further, there are more combined RV and boats installed with Dometic Defective Gas Absorption Refrigerators sold in Florida than in most of the other states.  Finally, there are approximately fifteen registered Dometic dealers in Miami-Dade County and Dometic actively promoted these specific products annually at international trade shows in Miami (such as the Miami Boat Show).  South Florida serves as the main location that promotes and advertises all of Dometic's marine products, including the gas absorption refrigerators installed on boats.

3.      The defective design flaws of the gas absorption refrigerators should come as no surprise to Dometic.  Undersigned counsel brought a similar nationwide class action against Norcold, Inc., the main competitor of Dometic, in the Central District of California in 2013 (the "*Etter Action*").  Norcold and its co-Defendants in the *Etter Action*, similar to Dometic here, allegedly knew, but failed to disclose that their gas absorption refrigerators contained a design defect causing corrosion, cracks, and leaks, resulting in fires. That case was actively litigated for years, significant discovery was produced, and extensive scientific testing was conducted on the gas absorption refrigerators. In March 2016, the federal judge in *Etter* granted preliminary approval of the parties' nationwide class settlement that provided a fund of $36 million and other

relief to the class. *See Etter et al. v. TheTFord Corp., Norcold, Inc. et al.,* No. 13-cv-00081-JLS (C.D. Cal.).

4.     Since at least 2001, Defendant has designed, manufactured, sold and otherwise placed into the stream of commerce several models of Dometic Defective Gas Absorption Refrigerators for installation and use in recreational vehicles, all of which share common design and manufacturing defects that create a substantial risk of fire when the refrigerators are used as designed and for their intended purpose during their expected usable life.  These gas absorption refrigerators have caused and/or contributed to numerous cooling unit leaks of flammable gas and fires.

5.     The common defect found in the Dometic Defective Gas Absorption Refrigerators is that the boiler tubes in the cooling units manufactured and distributed by Defendant are prone to premature corrosion or fatigue failure, and can develop microscopic cracks, causing the flammable chemicals and gases inside the sealed boiler tubes to leak and thereby create the serious risk of fire when in the vicinity of a heat source.  Because the cooling units' boiler tubes act as a self-contained, highly pressurized unit, when a leak occurs, the unit is ruined and must be replaced at significant cost, even if a fire does not result. Material facts that Defendant possessed regarding these dangerous defects and risks were not disclosed to consumers in the Classes by Defendant prior to the time they purchased their gas absorption refrigerators, but instead were suppressed.  In turn, hundreds, if not thousands of cooling units have developed debilitating leaks, and a significant amount of those (also believed to be in the thousands) have been involved in fires, all while their owners remain unaware of these significant risks.

6.     Defendant has actual knowledge of the fire claim history of its gas absorption refrigerators and upon information and belief, maintains records of those incidents.  The inherent

defects, frequency of fires, and Defendant's suppression of facts pertaining thereto, are not limited to any single state, but rather occur in and negatively affect Class members nationwide, including those where each named Plaintiff resides.

7.     At all times Defendant had an affirmative duty to disclose such risks about its dangerously defective products to consumers in the Class.  By failing to do so, Defendant violated its legal duties and caused financial injury and loss to the members of the Class while also exposing them to the potential of serious personal injury or death.  As no reasonable consumer would knowingly purchase such an item (either alone or as part of an RV or boat), or if they did, only at a vastly reduced price, Class members have been injured in a common way from Defendant's conduct.  Class members did not get the benefit of their bargain (a defect free unit), and/or overpaid for the item received since it was of reduced value and brings with it the need to purchase a replacement at an additional cost to be safe.

8.     Rather than eliminate the design and manufacturing defects contained in its gas absorption refrigerators – or provide an adequate warning of potential safety risks to users of the products – Defendant instead sought to conceal and minimize the dangers inherent in the refrigerators' design and operation through two limited recalls that they initiated: the first one in 2006 (NHTSA No. 06E-076) and then another in 2008 (NHTSA No. 08E-032) (hereinafter collectively referred to as "Recalls").  In each Recall, Defendant represented that there was a limited defect and that the retrofit devices to be installed as part of the recalls (a "Thermo Disc" and "Thermal Fuse" on the metal shielding surrounding the cooling unit boiler tube, and a "Secondary Burner Housing Assembly" in the front of the cooling unit boiler tube) would fix that defect, rendering the refrigerators safe to use.  But this was inaccurate as the Recalls and retrofits did not cure the underlying problem in the cooling units, namely that that the boiler

tubes were designed in a manner in which they would corrode during the anticipated useful life of the refrigerator when used as intended, subjecting the owner to risk of: (a) microscopic leaks releasing the internal chemicals (ammonia, hydrogen and sodium chromate) and risk of fire; and (b) destruction of the cooling unit, requiring replacement. The underlying defect, therefore, remained even in units that were subjected to the recall and retrofitted. These material facts were concealed and continue to be concealed by Defendant and fires have continued after the Recalls and installation of retrofits. The risk of serious injury therefore remains and this lawsuit seeks appropriate relief for the Class. Plaintiffs and Class members should not have to wait until they experience a dangerous fire to seek relief for the defect.

9.     Defendant's ongoing concealment and omission of such facts, when it had a continuing duty to disclose such facts to consumers was misleading and deceptive. It was reasonably foreseeable to Defendant that its conduct and failure to act and warn the Class members, in light of the information it actually or should have possessed, would expose Plaintiffs and members of the Classes to unreasonable risks of injury and loss and cause Plaintiffs and members of the Classes damage, injury, and loss.

10.     Defendant's actions and concealment of material facts injured and harmed consumers in the Class by inducing them to unknowingly purchase and/or retain a product that contains inherent dangers and design and manufacturing defects. These products continue to carry an inherent risk of causing devastating fires, of which Defendant is aware. Given its exclusive and/or superior knowledge of the product defects and inherent risk of the danger involved in their continued use, Defendant had an ongoing duty to disclose such facts to members of the Class. Defendant provided no notice of the inherent and potential risks of use of its product to consumers at the time of sale or acquisition, but rather concealed those risks

through omissions of material fact while implying in marketing, sales, and operational materials that the products were safe and defect-free.  By and through such conduct, Defendant breached the duties of care that it owed to Plaintiffs and the Class members, including the duty to warn them of dangerous defects in its refrigerators.

11.    In short, Defendant's Defective Gas Absorption Refrigerators all continue to share common defects, which are dangerous to Class members who own them.  All Defendant's Defective Gas Absorption Refrigerators (even those that have been replaced, recalled, and/or retrofitted) continue to suffer from the same common latent defects in the design of the refrigerator cooling units' boiler tubing which renders the units susceptible to danger of overheating, fracture, leak of flammable gases, ignition and in turn, fire.  Despite this, Defendant has concealed, withheld, and omitted disclosure of common material facts from the Class about the continuing dangerous nature of its gas absorption refrigerators.  Even if an original cooling unit was replaced or received Defendant's retrofit when recalled, Defendant's Defective Gas Absorption Refrigerators continue to suffer from these common latent defects and risks of fire.  Thus, to date, the true nature of these risks of danger, fire and financial loss have not been fully disclosed by Defendant.  These omissions are common to the Classes and have caused common injury to the Class members.  Had the truth been fully disclosed, as Defendant had a duty to do at all times, reasonable consumers, like Plaintiffs and the members of the Classes, would have acted differently and taken steps to protect themselves, as described further below.  All Class members possess a recreational vehicle that, once the truth is disclosed, is of diminished value due to the presence of one of Defendant's Defective Gas Absorption Refrigerators, as opposed to a unit without the latent defects and risks of fire.  The proper remedy is not a replacement of the Dometic gas absorption refrigerator with a different Dometic gas absorption refrigerator or a

retrofitted Dometic gas absorption refrigerator – both of which still contain the same latent defects, which create the risk of fire. Rather, the proper remedy is the provision of a refrigerator (gas absorption or otherwise) that does not contain the latent defects in the cooling unit described below, and is therefore safe to use for its intended purpose. This lawsuit seeks such remedies and confers a public benefit.

12. Plaintiffs bring this lawsuit against Defendant individually and on behalf of the Classes of all other similarly situated purchasers and owners of Defective Gas Absorption Refrigerators within the Class Period. Plaintiffs allege representative claims for unfair and deceptive acts and practices, unfair competition, breach of express and/implied warranty, and unjust enrichment under the statutory and common laws of Florida, as well as the states in which the named Plaintiffs reside. Among other appropriate relief, Plaintiffs seek to have Defendant (1) repair and/or replace the defective and dangerous refrigerators/cooling units distributed to the Class and (2) compensate Class members for the diminution of value of their RVs/boats as a result of the defects. This case does not seek recovery for personal injuries on a class-wide or individual basis.

## II. JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

14. Plaintiffs are citizens of the States of Florida, California, Georgia, Minnesota, and North Carolina, who own RV's that contain a Defective Gas Absorption Refrigerator.

15. Defendant Dometic Corporation is a Delaware corporation with principal offices in Louisville, Kentucky and Pompano Beach, Florida. Defendant is the successor of Dometic

7

LLC and liable for all of its debts, liabilities and duties.   Dometic LLC ceased to exist as a result of a merger on or about December 12, 2012.   All debts, liabilities and debts of Dometic LLC attach to Dometic Corporation.   Defendant Dometic is registered to do business in the aforementioned states, and throughout the United States.

16.     The amount in controversy exceeds $5,000,000 and there are at least one hundred members in the putative Class.

17.     This Court has jurisdiction over Dometic because it is a foreign corporation authorized to conduct business in Florida, does business in Florida, maintains offices in Florida, and has registered with the Florida Secretary of State, or does sufficient business in Florida, has sufficient minimum contacts with Florida, or otherwise intentionally avails itself of the Florida consumer market through the promotion, marketing, sale, and service of gas absorption refrigerators and other products in Florida.   This purposeful availment renders the exercise of jurisdiction by this Court over Dometic or related entities permissible under traditional notions of fair play and substantial justice.

18.     Venue is proper in this District under 28 U.S.C. § 1391 because Dometic transacts business and may be found in this District and a substantial portion of the practices complained of herein occurred in the Southern District of Florida.   Dometic maintains offices in Pompano Beach, which is in this District.

19.     All conditions precedent to this action have occurred, been performed, or have been waived.

20.     With respect to claims asserted under the California Civil Code §1750 *et seq.*, commonly known as the Consumers Legal Remedies Act (hereinafter "CLRA" or "§1750"), Plaintiffs do not seek recovery of damages under the CLRA claim at this time.   By letter dated

June 16, 2016, mailed as directed in California Civil Code §1782, Plaintiffs notified Defendant of its violations of the CLRA and demanded that Defendant provide a remedy that rectifies its misconduct.  In this complaint, Plaintiffs, on behalf of themselves and any California Sub-Class members, seek only injunctive and other equitable relief pursuant to California Civil Code §1780(a) and (d).  If Defendant fails to give or agree to give a sufficient remedy for the violations of the CLRA set forth herein within a reasonable time (within 30 days of the receipt of the June 16, 2016 letter) as set forth in Civil Code §1782(c), Plaintiffs will amend this complaint to also seek damages under the CLRA for California Sub-Class members.   Plaintiffs, on behalf of themselves and any California Sub-Class members do however, seek damages under other claims that they assert at this time, to the extent damages are available under those claims.

### III.    PARTIES

**A.    Plaintiffs**

21.    Plaintiff Brandy Varner ("Varner") is a consumer residing in Arcadia, Florida.  In 2014 Varner purchased a 2014 Keystone Cougar Fifth Wheel trailer equipped with a Dometic gas absorption refrigerator as original equipment.  As with all Class members, the Dometic refrigerator in Varner's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendant.  Varner owned the trailer and Dometic refrigerator during the Class Period and is a member of the Class.  Varner's refrigerator shared the same common design defects as all of Defendant's other gas absorption refrigerators.  Varner has not received any notice or warning of the inherent defects in the refrigerator, or the safety risks of continued use of the product, from Defendant.  Defendant failed to disclose to Varner the facts, described below, regarding the gas absorption refrigerator's inherent defects, risks, and safety hazards that it exclusively possessed but withheld, concealed,

and failed to disclose to Varner and the other members of the Class.  The facts concealed by Defendant were material.  Defendant had an ongoing duty, throughout the Class Period, to disclose these facts to Varner and the Class.  Reasonable consumers, like Varner and the Class, would want to know about the Dometic Gas Absorption Refrigerator's inherent defects, ongoing risks, and safety hazards.  Like other reasonable consumers, had Varner been provided all material facts regarding the Defective Gas Absorption Refrigerator's inherent defects, risks, and safety hazards that Defendant exclusively possessed but omitted, withheld, and concealed from Varner and the Class, Varner would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Dometic refrigerator containing the latent defects described herein.  Defendant's wrongful conduct, as described herein, has caused and will continue to cause Plaintiff Varner and all Class members injury in fact that is common to Plaintiff Varner and all Class members.  Among other things, as a result of Defendant's conduct described herein, Plaintiff and all Class members lost the benefit of their bargain as they unknowingly paid for a defective Dometic refrigerator, the Dometic refrigerator has diminished in value, the Dometic refrigerators have suffered a loss of usefulness, and Plaintiff and all Class members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and also include sodium chromate.  The amount of said common injury and damage will be proven at trial according to proof.

22.      Plaintiff Michael Link ("Link") is a consumer residing in Vidalia, Georgia.  In 2016, Link purchased a 2016 Keystone Cougar Fifth Wheel trailer equipped with a Dometic DM2852 gas absorption refrigerator as original equipment.  As with all Class members, the

Dometic refrigerator in Link's RV was designed, manufactured, sold, distributed, constructed, manufactured, and/or assembled and put into the stream of commerce by Defendant. Plaintiff Link owned the trailer and Dometic refrigerator during the Class Period and is a member of the Class.  Link's refrigerator shared the same common design defects as all of Defendant's other gas absorption refrigerators.  Link has not received any notice or warning of the inherent defects in the refrigerator, or the safety risks of continued use of the product, from Defendant. Defendant failed to disclose to Link the facts, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that it exclusively possessed but withheld, concealed, and failed to disclose to Link and the other members of the Class.  The facts concealed by Defendant were material.  Defendant had an ongoing duty, throughout the Class Period, to disclose these facts to Link and the Class.  Reasonable consumers, like Link and the Class, would want to know about the Dometic gas absorption refrigerator's inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had Link been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendant exclusively possessed but omitted, withheld, and concealed from Link and the Class members, Link would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Dometic refrigerator containing the latent defects described within.  Defendant's wrongful conduct, as described herein, has caused and will continue to cause Plaintiff and all Class members injury in fact that is common to Plaintiff and all Class members.  Among other things, as a result of Defendant's conduct described herein, Plaintiff Link and all Class members lost the benefit of their bargain as they unknowingly paid for a defective Dometic refrigerator, the Dometic refrigerator has diminished in value, the Dometic refrigerators have suffered a loss of

usefulness, and Plaintiff and all Class members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate). The amount of said common injury and damage will be proven at trial according to proof.

23.    Plaintiff Robert Corwin ("Corwin") is a consumer residing in Charlotte, North Carolina. In or about 2008, Corwin purchased a 2008 Fleetwood Discovery motor home equipped with a Dometic NDA 1402 gas absorption refrigerator as original equipment. As with all Class members, the Dometic refrigerator in Corwin's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendant. Corwin owned the trailer and Dometic refrigerator during the Class Period and is a member of the Class. Corwin's refrigerator shared the same common design defects as all of Defendant's other gas absorption refrigerators. Corwin has not therefore received any notice or warning of the inherent defects in the refrigerator, or the safety risks of continued use of the product, from Defendant. Defendant failed to disclose to Corwin the facts, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that it exclusively possessed but withheld, concealed, and failed to disclose to Corwin and the other members of the Class. The facts concealed by Defendant were material. Defendant had an ongoing duty, throughout the Class Period, to disclose these facts to Corwin and the Class. Reasonable consumers, like Corwin and the Class, would want to know about the Dometic gas absorption refrigerator's inherent defects, ongoing risks and safety hazards. Like other reasonable consumers, had Corwin been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendant exclusively possessed but

omitted, withheld and concealed from Corwin and the Class, Corwin would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Dometic refrigerator containing the latent defects described within. Defendant's wrongful conduct, as described herein, has caused and will continue to cause Plaintiff Corwin and all Class members injury in fact that is common to Plaintiff and all Class members. Among other things, as a result of Defendant's conduct described herein, Plaintiffs and all Class members lost the benefit of their bargain as they unknowingly paid for a defective Dometic refrigerator, the Dometic refrigerator has diminished in value, the Dometic refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate). The amount of said common injury and damage will be proven at trial according to proof.

24.     Plaintiffs Don and Bobbi Shepherd (the "Shepherds") are consumers residing in Savage, Minnesota. In or about October, 2013, the Shepherds purchased a 2014 Blue Ridge Forest River 5th wheel trailer equipped with a Dometic 2852FX gas absorption refrigerator as original equipment. As with all Class members, the Dometic refrigerator in Shepherds' RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendant. The Shepherds owned the 5th wheel trailer and Dometic refrigerator during the Class Period and are members of the Class. The Shepherds' refrigerator shared the same common design defects as all of Defendant's other gas absorption refrigerators. The Shepherds have not received any notice or warning of the inherent defects in the refrigerator, or the safety risks of continued use of the product, from Defendant. Defendant

failed to disclose to the Shepherds the facts, described below, regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that it exclusively possessed but withheld, concealed, and failed to disclose to the Shepherds and the other members of the Class.  The facts concealed by Defendant were material.  Defendant had an ongoing duty, throughout the Class Period, to disclose these facts to the Shepherds and the Class.  Reasonable consumers, like the Shepherds and the Class, would want to know about the Dometic gas absorption refrigerator's inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had the Shepherds been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks, and safety hazards that Defendant exclusively possessed but omitted, withheld, and concealed from the Shepherds and the Class members, the Shepherds would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Dometic refrigerator containing the latent defects described within.  Defendant's wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all Class members injury in fact that is common to Plaintiffs and all Class members.  Among other things, as a result of Defendant's conduct described herein, Plaintiffs and all Class members lost the benefit of their bargain as they unknowingly paid for a defective Dometic refrigerator, the Dometic refrigerator has diminished in value, the Dometic refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate).  The amount of said common injury and damage will be proven at trial according to proof.

25.     Plaintiffs Michael Acosta and Ann Field ("Acosta/Field") are consumers residing in Desert Hot Springs, California.  In or about 2007, Acosta/Field purchased a 2007 Fleetwood Wilderness trailer equipped with a Dometic 2852 gas absorption refrigerator as original equipment.  As with all Class members, the Dometic refrigerator in Acosta/Field's RV was designed, manufactured, sold, distributed, constructed, manufactured and/or assembled and put into the stream of commerce by Defendant.  Acosta/Field owned the trailer and Dometic refrigerator during the Class Period and are members of the Class.  Acosta/Field's refrigerator shared the same common design defects as all of Defendant's other gas absorption refrigerators. Acosta/Field have not received any notice or warning of the inherent defects in the refrigerator, or the safety risks of continued use of the product, from Defendant.  Defendant failed to disclose to Acosta/Field the facts, described below, regarding the gas absorption refrigerator's inherent defects, risks, and safety hazards that it exclusively possessed but withheld, concealed, and failed to disclose to Acosta/Field and the other members of the Class.  The facts concealed by Defendant were material.  Defendant had an ongoing duty, throughout the Class Period, to disclose these facts to Acosta/Field and the Class.  Reasonable consumers, like Acosta/Field and the Class, would want to know about the Dometic gas absorption refrigerator's inherent defects, ongoing risks and safety hazards.  Like other reasonable consumers, had Acosta/Field been provided all material facts regarding the gas absorption refrigerator's inherent defects, risks and safety hazards that Defendant exclusively possessed but omitted, withheld and concealed from Acosta/Field and the Class, Acosta/Field would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a Dometic refrigerator containing the latent defects described within.  Defendant's wrongful conduct, as described herein, has caused and will continue to cause Plaintiffs and all

Class members injury in fact that is common to Plaintiffs and all Class members. Among other things, as a result of Defendant's conduct described herein, Plaintiffs and all Class members lost the benefit of their bargain as they unknowingly paid for a defective Dometic refrigerator, the Dometic refrigerator has diminished in value, the Dometic refrigerators have suffered a loss of usefulness, and Plaintiffs and all Class members are (or have been) exposed to further costs and expenses to dispose of and/or replace said refrigerators, in that the refrigerators' cooling units contain chemicals/substances that are corrosive (ammonia), explosive (hydrogen) and a known carcinogen (sodium chromate). The amount of said common injury and damage will be proven at trial according to proof.

26.     Each above-named Plaintiff, like the members of the Class and each Sub-Class, personally have standing to assert the claims alleged herein as each Plaintiff has been injured, damaged, suffered cognizable loss and incurred loss of money by reason of the conduct of Defendant described further herein. At relevant times within the Class Period, each Plaintiff owned a RV or boat with a defective gas absorption refrigerator, marketed, sold, manufactured, and/or distributed by Defendant, where the risk and possibility of fire has either occurred, and/or remains actual or imminent. In order to eliminate the serious safety risks involved with the continued use of Defendant's defective products, each Plaintiff has or will be forced to incur costs to replace Defendant's defective refrigerators with refrigerators that are not defective, and do not pose a safety risk when used for their intended purpose. Those costs include, but are not limited to, parts and labor to remove, replace and dispose of Defendant's refrigerators. These costs are common to all Plaintiffs and members of each Sub-Class, and constitute economic losses and damages directly and proximately caused by the Defendant's wrongful conduct, as set forth herein. Regardless of a manifested defect, each Plaintiff has been injured, *inter alia*,

because his or her injuries consist of economic losses, which include the diminished value of his or her RV that results once the full truth regarding the defective gas absorption refrigerators is made public.   The information currently in the marketplace regarding the Defective Gas Absorption Refrigerators has caused the value of the RV's containing them to partially drop and once the full extent and complete truth about the Defective Gas Absorption Refrigerators and the continuing risk of fire despite recalls is made public, the value of any RV containing a Defective Gas Absorption Refrigerator will drop even more, causing further injury to Plaintiffs and the Classes.   Plaintiffs, *inter alia*, seek recovery of the difference between the value of the RV as delivered with the Defective Dometic Gas Absorption Refrigerator, and the value those RV's would have had had it been delivered as warranted and not in a defective state.   Plaintiffs suffered economic loss and injury-in-fact because Defendant's Gas Absorption Refrigerators they acquired were defective at the moment of purchase, and at all times continuing thereafter, due to Defendant's concealment of material facts.   Plaintiffs contracted for completely safe products, but did not receive such products but instead, received dangerous products highly susceptible to the risk of fire within the products' useful and anticipated life, which are, in turn, worthless.   As a result of the foregoing, Plaintiffs and all Class members lost the benefit of their bargain.

**B.     Defendant**

27.     Defendant Dometic Corporation ("Defendant" or "Dometic") is a Delaware corporation with its headquarters and principal place of business at 9100 Shelbyville Rd. in Louisville, Kentucky with offices in Pompano Beach, Florida.   Dometic Corporation is a wholly owned subsidiary of Dometic AB.

28.     Defendant is the successor-in-interest of Dometic LLC and liable for all of its debts, liabilities, and interests.

29.     Defendant's Dometic-branded products, including the Dometic Defective Gas Absorption Refrigerators at issue, were and are sold in Florida and throughout the United States by Defendant.  Defendant is authorized to transact and conduct business in Florida and throughout the United States.

30.     Dometic maintains a significant market share in the business areas it operates, including with respect to gas absorption refrigerators used in RV's and boats.  *Our Business Areas*, DOMETIC, http://www.dometicgroup.com/en/Company/Business-Areas/ (last visited June 23, 2016) ("The Group serves industry clients as well as the aftermarket with a complete range of products. Recreational Vehicles (RV): We have close business relationships with and sell to almost all larger OEM customers of caravans, towables and motorhomes. Our market position is number one or two in almost all product categories in all three regions.").

31.     The parent company of Defendant Dometic Corporation is a Swedish public limited liability company based in Solna, Sweden, which is listed on Nasdaq Stockholm. *Corporate Governance*, DOMETIC, http://www.dometicgroup.com/en/Company/Corporate-Governance/ (last visited June 23, 2016); *see also Corporate Governance Report*, DOMETIC, http://www.dometicgroup.com/Global/2_OurCompany/CorpGovernanceReports/Dometic-Corporate-Governance-Report-2015-EN.pdf (last visited June 23, 2016.

## IV.     FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

32.     Dometic (and/or its predecessors) has been in business since at least 1922. *History*, DOMETIC, http://www.dometicgroup.com/en/Company/History/ (last visited June 23, 2016) ("1922 (Munters and Baltzar von Platen invent the first refrigerator using absorption technology (AB Arctic); 1925 (Electrolux acquires AB Arctic and initiates mass production of absorption refrigerators); …2001 (EQT III Ltd. acquires Electrolux assets and the Dometic operating and legal structure is created.").

33.     On its website, Dometic describes itself as follows, and boasts that it "is still the absorption cooling specialist":

Dometic is the foundation of the Dometic Group and a product brand

Dometic was created as a brand in the US in 1968 when Electrolux Leisure Appliances was still part of the Electrolux Group. It was natural that Dometic was selected as the company name when Electrolux divested Leisure Appliances in 2001 to EQT. Dometic's business is largely based on the patented invention of absorption cooling technology that goes back to 1922 when Carl Munters and Baltzar von Platen invented it. Dometic is still the absorption cooling specialist.

Dometic designs and manufactures high-quality, innovative products for the RV, marine, hotel, automotive, agriculture, and trucking industries. Under the Dometic brand, we supply these industries with an extensive range of appliances and products.

While the strength of the Dometic brand was born in the invention of absorption cooling technology for products such as coolers and refrigerators, the brand has grown to include climate control products, awnings, sanitation systems, windows and doors – all of which stand on their own as quality representatives of a truly global brand.

Today the Dometic brand is associated with market leadership, comfort, and strength. People entrust their adventures to Dometic, the world leader in providing a comfortable mobile lifestyle.

All our products and services share a common philosophy: To find out what people really need and want, then use that insight to create thoughtfully designed innovations that provide a better user experience that makes their lives more comfortable when they are away from home.

Local presence, a vast sales and service network, and a very close relationship to our markets are essential to being a trustworthy partner to the industries Dometic serves.

*About Dometic*, DOMETIC, http://www.dometic.com/USA/About-Dometic/ (last visited June 23, 2016).

34.     On its website, Dometic's President and CEO, Roger Johansson further describes Dometic's business and informs consumers that Dometic's products are high "quality" and "enrich people's experiences when away from home":

**Our Company**

Dometic's world is the world of mobile living.

We develop and offer products and solutions that enrich people's experiences when away from home, be it in a motorhome or caravan, boat, truck or simply outdoors. Cooling and heating are essential in our offering through air conditioners, refrigerators, cookers, water heaters, furnaces or portable coolers for a wide variety of use.

We offer delivery from manufacturing plants close to our customers, and a global distribution and support network to take care of after-sales and service. The majority of our products are manufactured at our own production facilities in Asia Pacific, Europe and the U.S.

Products are sold through multiple distribution channels under the following well established brands: Dometic, WAECO, Marine Air, Cruisair, Condaria, SeaLand, Mobicool and Atwood. Our brands have a solid reputation and are recognized for their high quality.

For us at Dometic, introducing smart, innovative products with high user-friendliness and quality is what drives us. As a result, we have become a premier provider of mobile comfort products for the RV (Caravans and Motorhomes), Marine, Commercial & Passenger Vehicle markets in more than 100 countries around the world.

I hope you will find our company interesting. If you have questions or ideas, please do not hesitate to contact us either through our sales organizations around the world or our head office in Solna, Sweden.

*Our Company*, DOMETIC, http://www.dometicgroup.com/en/Company/ (last visited June 23, 2016).

35.    Defendant also promotes that its "core" company values include responsibility and attentiveness to consumer needs and demands, and that "we understand the end-users." *The Dometic Way*, DOMETIC, http://www.dometicgroup.com/en/Company/Our-Way/ (last visited June 23, 2016).

36.    The common cooling systems in all Dometic RV and boat refrigerators use a nearly 100-year-old technology called "gas absorption."

37.    Defendant holds itself out to the public as one of the world's leading gas absorption cooling specialists and manufacturers of gas absorption refrigerators for use in RV's and boats:

> Dometic's business is largely based on the invention of the absorption technology that goes back to 1922 when Carl Munters and Baltzar von Platen invented this cooling technology. Dometic is still the absorption cooling specialist.
>
> Dometic is known as the supplier of high quality products with a high degree innovation to the recreational vehicle, marine and commercial and passenger vehicle industries. Under the Dometic brand we supply these industries with a very extensive range of different appliances and products.
>
> While the strength of the Dometic brand was born on the invention of absorption technology, it has grown to include air conditioners, refrigerators, awnings, cookers, sanitation, lighting, mobile power equipment, windows, doors, and other comfort products that stand on their own as quality representatives of a truly global brand. The Dometic brand is today associated with market leadership, quality and innovation. People entrust their adventures to Dometic, the world leader in comfort.
>
> Based on the same absorption technology Dometic is also the brand used for minibars for hotel room, compact silent refrigerators for private/institutional use.
>
> All our products and services share the common philosophy - to make that extra effort to find out what people really need and want. And then use that insight to create thoughtfully designed innovations that provide a better user experience and help make your life more comfortable, away from home. Local presence with a

good established service network and very close relation to the markets are essential to become a trustful partner to the industries Dometic serves.

*Dometic*, DOMETIC, http://www.dometicgroup.com/en/Products/Dometic/ (last visited June 23, 2016).

38.     Defendant's warranties pertaining to the Defective Gas Absorption Refrigerators tout its products as follows: "Congratulations, and Thank You for purchasing the industry's best built and best backed RV Refrigerator. Below you will find important warranty and maintenance information on Dometic's exclusive two (2) year warranty. Please take a few moments and familiarize yourself with the program. We at Dometic appreciate your business and are confident that you will have many years of trouble-free RV enjoyment."[1]

39.     Beginning in at least 1997, and continuing thereafter, Dometic designed, manufactured, assembled, marketed, sold, distributed or otherwise placed into the stream of commerce gas absorption refrigerators for use in RV's and boats.

40.     Defendant's gas absorption refrigerators come in a number of different models and sizes, including, but not limited to:  6 cu ft. (RM 2620, RM/DM2652, RM/DM2662 & RM/DM2663); 7 cu ft. (RM3762 & DMR/DMC 7-Series); 7.7 cu ft. (RM 2820); 8 cu ft. (DM2852, DM2862, RM3862, RM3863); 9 cu ft. (RM3962); 9.2 cu ft. (NDM1062); 12.3 cu ft. (RM 1350, 1350WIM); 14 cu ft. (NDA1402, 1402IMS).  The aforementioned models are collectively referred to throughout this complaint as the "Defective Gas Absorption Refrigerators."

---

[1] *Installation and Operating Instructions*,     DOMETIC, http://www.dometic.com/QBankFiles3/EPiServer/Dometic/US/Manuals/RV-manuals/Refrigerators/Dometic-DMR-DMC-Refrigerators-Manual-Web_29111.pdf (last visited June 23, 2016)

41.     All of Defendant's Defective Gas Absorption Refrigerators share the same technology, which involves a process whereby a solution of ammonia, water, sodium chromate, and hydrogen gas is heated by electricity or propane until it boils (approximately 400 degrees Fahrenheit), releasing ammonia gas.  The gas circulates through a series of tubes at approximately 450 psi.  As the ammonia gas is condensed to liquid, and then evaporated through interaction with the hydrogen gas, heat is removed from the refrigerator box, causing the temperature in the box to decrease and providing the refrigeration effect.  The series of tubes is referred to as a "cooling unit," and includes the heat source (propane and electric), as well as a condenser, evaporator, absorber, and solution tank.

## A.     All of Defendant's Gas Absorption Refrigerators Contain Common Design and Manufacturing Defects.

42.     The cooling units used on all of Defendant's Defective Gas Absorption Refrigerators contain common design and/or manufacturing defects that leak and can cause and/or enhance fires.

43.     Boiler tube leaks, exposing the unit to the risk of ignition and fire, occur due to the development of fatigue failure in the cooling unit boiling tubes when the refrigerators are used as intended.  The fatigue failure is the result of the inability of the steel tubing used by Defendant in its cooling units to withstand the fabrication and manufacturing process, and the stresses placed on the tubing during normal operation of the refrigerators, namely, high temperature, high pressure, and the effects of corrosion, including corrosive cooling solution. The combination of these factors causes microscopic cracks at and around the boiler tube – the section of the cooling unit that includes the electric heat inputs.  Microscopic cracks in the boiler tube section of the cooling unit cause highly flammable cooling solution, ammonia, and hydrogen gas to leak from the cooling unit.  When the solution in the cooling unit is reduced, the

cooling unit can experience a heating event that causes the steel tubing to reach excessively high temperatures resulting in fires, either by ignition of the escaping flammable gases, or by ignition of the combustible unprotected wood inside the refrigerator compartment. *See generally*, Layson, Peter D., Wensley, C. Alex, Keifer, Orion P., "Investigating Absorption Refrigerator Fires (Part1)", Fire & Arson Investigator Journal, 58/4, April 2008; Wensley, Charles A., Layson, Peter D., Keifer, Orion P., Martini, L. Henry, and Richardson, Wesley, "Investigating Absorption Refrigerator Fires (Part 2)", *Fire & Arson Investigator,* July 2008. Vol 59, No.1, pp 22-28.

44.     The cooling unit in Defendant's gas absorption refrigerators is a sealed boiler system.  The boiler tube of the cooling unit is where heat is applied to the cooling solution through electric heaters contained in pockets welded to the side of the boiler tube.  Heat from the heaters then passes first through the wall of the heating element pockets and then through the welds connecting the heating pockets to the boiler tube.  The Defective Gas Absorption Refrigerators cycle through heating and cooling periods multiple times per day when in operation.  These heating and cooling cycles create stress on the boiler tubes and lead to a breakdown of any protective layer on the inside of the boiler tubing that may have been established through pre-production treatment, or through the sodium chromate component of the cooling solution.  Once the protective layer is compromised, the corrosive cooling solution begins to reduce the boiler tube wall, creating microscopic corrosion pits and cracks.  When the wall of the boiler tube thins, cracks develop and the flammable substances can and do leak from inside the tubes through the area of breach, creating a fire risk because heat sources are also present.

45.     The following diagram is illustrative of the of the gas absorption system:



46.     The fires caused by Defendant's refrigerators create serious safety risks to users in that the flammable gases released in the event of a boiler tube leak – particularly the hydrogen – can explosively ignite and spread quickly through the refrigerator compartment and into the passenger area of the recreational vehicle.  Such fires also pose a serious safety risk to any person or property in the vicinity of the recreational vehicle in that refrigerator fires can expand quickly outside the RV to structures, other vehicles, and people nearby.  This is a common defect present in all of Defendant's Gas Absorption Refrigerators, and this common defect carries the risk of property damage, serious injury or death to individuals using Defendant's products. These material facts are not disclosed by Defendant to consumers purchasing and using its Defective Gas Absorption Refrigerators.

**B.     Defendant Continued to Produce, Market, and Sell Its Gas Absorption Refrigerators Despite Actual Knowledge of the Defects and Propensity To Cause Fires.**

47.     Since at least 2006, Defendant has had actual knowledge of the existence of the above-described design and manufacturing defects.  Upon information and belief, Defendant maintains non-public databases documenting the leak and fire history of its gas absorption refrigerators, and therefore at all times has had actual knowledge that the defects in its gas absorption refrigerators were causing damage to users of its products.  Notwithstanding this knowledge, information on these reports regarding the number and frequency of boiler tube leaks was not disclosed to the Classes but was withheld.  Defendant never modified the design of its gas absorption cooling units, or the fabrication, manufacture or installation of the cooling units, to eliminate the defects that cause the leaks.  Defendant never stopped marketing, selling, and placing the dangerously defective refrigerators into the stream of commerce until the refrigerators could be manufactured to operate safely.  Defendant never provided users of the refrigerators with adequate warnings of the risks of use of the product.  Rather, Defendant actively concealed and minimized the dangers and risks inherent in its defective products from consumers.

48.     The design and manufacturing defects in Defendant's gas absorption refrigerators, Defendant's active concealment of those defects, and the inadequate safety recall/retrofit campaigns conducted by Defendant, created serious and unreasonable safety risks to consumers and users of Defendant's products, *i.e.* the risk of property damage and injury by fire.  These safety risks were and are material to a reasonable consumer, including Plaintiffs and the members of the Class, who own Defendant's products.  Had Defendant disclosed the true nature and scope of the safety risks inherent in the use of its product in the sales and marketing material provided consumers along with the product, or with warnings prominently placed on the product, Plaintiffs, and all others similarly situated in the Class, would have been aware of the risks and

acted differently, *i.e.* purchased a different recreational vehicle that did not contain Defendant's defective product; decided not to retain an RV with a Dometic Defective Gas Absorption Refrigerator; paid less for the recreational vehicle or boat because of the defective product contained in it or because of the cost of replacing the defective product with an alternative, non-defective product (*e.g.*, an electrical refrigerator or another manufacturer's gas absorption cooling unit that did not contain the same propensity to corrode and leak); and/or taken other action.  Defendant had actual and exclusive knowledge of the exact nature and scope of the defects in its products, the fire claim history of the products, and the fact that its recall and retrofit campaigns did not address or fully eliminate the defects.  At all times, Dometic had a duty to disclose the safety risks inherent in the use of its product, and the inadequacies of its recall/retrofit campaigns to Plaintiffs, and to all members of the Class described herein. However, Defendant continually and actively concealed the true nature and scope of the defects, safety risks, and recall/retrofit inadequacies from Plaintiffs, and the members of the Classes described herein.

49.     Reasonable consumers, acting diligently, cannot discover the defects at issue. The defective boiler tubes, safety plugs and/or other parts are not visible to the user of a Dometic Defective Gas Absorption Refrigerator when installed in an RV and used as intended.

**C.     Defendant Has an Ongoing Duty to Disclose Material Facts About Dangerous Products that It Has Placed into the Stream of Commerce.**

50.     A fraudulent omission is actionable under the laws set forth herein if the omission is of a fact the defendant was obliged to disclose.  Defendant here had an ongoing duty to disclose all material facts regarding the Defective Gas Absorption Refrigerators and their continuing dangers as Defendant: (1) had superior and exclusive knowledge of material facts not known to the Plaintiffs and the Class members; (2) actively concealed material facts from

Plaintiffs and the Class members; and, (3) has made partial representations but also suppressed some material facts.

51.     Defendant has a duty to manufacture defect-free products and an ongoing duty to disclose details about known defects, hazards, and unreasonable safety risks (such as the fire risks here) regardless of any warranty period both truthfully and completely.  Due to the serious dangers involved, Defendant's duty to disclose known defects is ongoing.  The refrigerators that Defendant manufactured and placed into the stream of commerce have at least one common defect that poses a serious risk of fire and injury, but Defendant has never fully eliminated that defect, notwithstanding the existence of alternative designs that would lessen or eliminate the risks.  On the contrary, Defendant continues to market its refrigerators with representations that they are reliable and defect-free knowing that its products are dangerously defective and fires are still occurring in them.  Defendant has a duty to recall and retrofit or replace the products so that they can be operated safely.  While Defendant has conducted two product safety recalls and represented that the retrofits would render the products safe to use, it has actual knowledge that the retrofits do not work in that, *inter alia*: (a) they do not fully eliminate the defect that causes the risk of fire in the first place; and, (b) they are ineffective to counter the risks posed by the defects.  Defendant's products continue to cause fires even after any recall or any retrofit is installed.  These facts, however, are not disclosed to the members of the Class and instead constitute material omissions.

52.     In addition, the National Traffic and Motor Vehicle Safety Act of 1966, codified in Chapter 301 of Title 49 of the United States Code, ("Safety Act") requires a manufacturer of motor vehicles and motor vehicle equipment to conduct a notification and free remedy campaign (a "recall") when it discovers that its product contains a defect that is related to motor vehicle

28

safety (commonly referred to as a "safety-related defect" or a "safety defect").  49 U.S.C. § 30118(c)(1).

53.     The Safety Act at 49 U.S.C. § 30018(c)(1) provides that a manufacturer shall notify the agency and owners when it "learns that a vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety."  In enforcing this requirement, the National Highway Transportation Safety Administration or "NHTSA" has construed this provision to mean that an actual safety defect decision *per se* by the manufacturer is not necessary to establish a violation of § 30018(c)(1), if the facts are such that the manufacturer should have in good faith made such a determination.  In other words, a manufacturer cannot lawfully avoid its recall responsibilities by ignoring the evidence of a safety defect. The precursor to § 30118(c)(1), which contained substantially similar language, has been held to impose on a manufacturer the duty to notify and remedy whether it actually determined, or it should have been determined, that its products are defective and the defect is safety-related.

**D.     Material Facts About the Ongoing Fire Danger Despite Any Recalls or Retrofits Are Concealed and Suppressed by Defendant.**

54.     Defendant has and continues to have actual knowledge that its Defective Gas Absorption Refrigerators contain defects that cause fires.  Despite knowledge of the defects and fire risks, Defendant continues to this day to market its gas absorption refrigerators on its website, and other materials, without mention of the defects and fire risks, while promoting itself as the world's gas absorption "specialist," that consumers "trust."  *See*, *Dometic*, DOMETIC , http://www.dometicgroup.com/en/Products/Dometic/ (last visited June 23, 2016).  ("Dometic is still the absorption cooling specialist….The Dometic brand is today associated with market leadership, quality and innovation. People entrust their adventures to Dometic, the world leader in comfort").

55.     Common omissions of material fact regarding the defects have been made to the Classes by Defendant during the Class Period.  Had Defendant not concealed the material facts described above, which implicate safety concerns, Plaintiffs and the Class would have been aware of those facts, acted differently, and not been injured and damaged.

56.     As a result of Defendant's concealment and other actions outlined above, Plaintiffs and the members of the Class that owned and/or own Defendant's gas absorption refrigerators have been misled by Defendant's omissions into purchasing, retaining and/or using the refrigerators, believing them to be safe and suitable for their intended purpose.  Plaintiffs and the members of the Class have further been misled by Defendant's omissions into believing that its refrigerators do not contain dangerous defects or potential risks or, if the refrigerators were part of a product safety recall by Defendant, that any defects or potential safety risks have been eliminated by Defendant's retrofit campaigns.  In fact, Defendant's gas absorption refrigerators have never been, and are not, safe for their intended purpose in that Defendant has never eliminated the design and manufacturing defects that cause its products to ignite fires.  Plaintiffs reasonably relied upon Defendant's conduct described herein.  Defendant made material omissions regarding the defects, dangers, and hazards associated with the gas absorption refrigerators, information solely within Defendant's control, rendering it impossible for Plaintiffs and the members of the Classes to know the hazards associated with the gas absorption refrigerators they purchased.  As a result, Plaintiffs and the members of the Class who own Defendant's gas absorption refrigerators continue, unknowingly, to be put at risk of damage or injury through the use of Defendant's Defective Gas Absorption Refrigerators.

E.      **Defendant's Recalls Cause Injury to Consumers.**

57.     Defendant's post-sale actions are deceptive and misleading in that they conceal and/or minimize the dangers and risks inherent in the use of Defendant's products from consumers and federal regulators (*e.g.*, the NHTSA), and lead them to believe that there is a single design and manufacturing defect in some of its refrigerators that is corrected through product safety recalls, when in reality there remains a common defect in all of its products, none of which are corrected through the product safety recalls Defendant has conducted. Notwithstanding Defendant's recall and retrofit campaigns, the risk of fire remains.  This harm to consumers is the direct result of Defendant's intentional act of placing defective products into the stream of commerce, and Defendant's intentional decision to retrofit the product with devices that do not remedy any of the design and manufacturing defects.

58.     Defendant conducted two limited recalls, one in 2006 and one in 2008, neither of which cured the defect inherent in the population of Defective Dometic Gas Absorption Refrigerators.

59.     The 2006 Recall was limited to Dometic 2-door refrigerator Models NDR1062, RM2652, RM2662, RM 2663, RM2852, RM2862, RM3662, RM3663, RM3862, and RM3863 manufactured between April 1997 and May 2003.  The 2008 Recall involved all the same models, manufactured between June 1, 2003 and September 30, 2006, except Model RM3863.

60.     Defendant did not initiate its recalls of Model NDR1062, RM2652, RM2662, RM 2663, RM2852, RM2862, RM3662, RM3663, RM3862, and RM3863 refrigerators to eliminate the defects in said products that cause and/or enhance fires, therefore rendering the products safe to use.  Rather, Defendant initiated product safety recalls as a low cost alternative to providing a complete fix of the defects.  In doing so, Defendant concealed and masked the true nature and extent of the defects and dangers involved in the use of its product and misled consumers and

federal regulators into the belief that Defendant's recalls were both comprehensive and effective when they were not.

61.     Defendant's 2006 and 2008 recalls indicated that the problem with the cooling units was that they were subject to fatigue failure in the area of the certain welds, such as those between the heater and boiler tube.  The recalls, however, did not eliminate this problem and prevent the corrosion that could lead to a leak and fire.  Instead, the recalls called for the installation of retrofit devices (a "Thermo Disc" or "Thermal Fuse" or "Secondary Burner Housing Assembly") in the area of the boiler tubes, in order to: (a) detect temperature levels at the boiler tube and to shut down power to the refrigerator controls if a threshold temperature was exceeded; and (b) guard the refrigerator cabinet in the event of flames or excessive heat caused by a boiler tube leak.  Notably, the retrofit devices did not prevent the boiler tubes from corroding and leaking, leading to the release of flammable gases and materials in the vicinity of a heat source.  Leaks and fires therefore have continued to occur in Defective Gas Absorption Refrigerators even if they have had the retrofit devices installed.

62.     Neither of the above-mentioned retrofits works to eliminate the defects and inherent safety risks in Defendant's refrigerators.  As a result, common defects and risk of dangerous fires remain in Defendant's Defective Gas Absorption Refrigerators.  Neither of the retrofits has dealt with – much less eliminated – the propensity of the cooling units to leak cooling solution and flammable gases, which causes the cooling units to overheat and cause fires.  Neither of the retrofits has been able to control – much less eliminate – the excessive temperatures leaking cooling units achieve, which leads to fires.  Upon information and belief, the gas absorption refrigerators sold by Defendant post-2006 contain the same design and/or manufacturing defects as the pre-2006 refrigerators, with the exception that the new refrigerators

are equipped with the above-described retrofit devices.  These facts have not been disclosed to members of the Classes.

63.    Defendant's above-described concealment of material facts regarding its gas absorption refrigerators and the ineffective, misleading, and fraudulent recall and retrofit campaigns Defendant has initiated, have injured and harmed, and continue to harm Class members in, *inter alia*, the following ways.  *First*, by failing to disclose complete and accurate information regarding the nature and scope of the design and manufacturing defects in its products, Defendant has misled, and continues to mislead consumers into the belief that Defendant's products are safe to use for their intended purpose, when in fact, said products constitute a serious fire hazard.  *Second*, Defendant's limited, misleading and ineffective recall and retrofit campaigns have created, and continue to create, the false impression to consumers that if they participate in the recall campaigns, their gas absorption refrigerators will be rendered safe to use, when in fact the retrofits used by Defendant are ineffective to prevent its products from causing fires; the defects inherent in the refrigerators will cause fires whether retrofitted or not.

64.    Defendant's conduct, as outlined herein, is misleading, deceptive and unfair to the members of the Class.  Consumers are induced into believing that Defendant's products are not defective, or that any defects have been corrected through the product safety recalls.  Class members have not received the value for which they bargained when they purchased Defendant's products.  As a result, Class members are left with RV's, boats and refrigerators that are of diminished value, among other injuries and damages.

## V.    ACCRUAL OF CLAIMS AND EQUITABLE TOLLING

65.     Defendant has knowingly sold gas absorption refrigerators that were defectively designed, would fail prematurely, and were not suitable for their intended use.  At all relevant times, Defendant also knew that the design defects in its gas absorption refrigerators created and constituted a serious safety and fire hazard, and that its products were in fact causing fires in recreational vehicles on almost a daily basis for more than a decade, including during the Class Period and continuing through the present time.  Further, at all times extending through the Class Period, Defendant knew that the design defects and safety hazards in its gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs available in the market.

66.     Notwithstanding Defendant's knowledge of the design defects and inherent safety risks in its gas absorption refrigerators, and its knowledge of alternate designs to eliminate the defects and safety hazards, Defendant failed and refused to alter its gas absorption refrigerator design. Instead, Defendant engaged in a continuous pattern of concealment of material facts, designed to mislead Plaintiffs and Class members into believing that the Dometic Defective Gas Absorption Refrigerators they owned were safe.  In that the defects and safety risks to users of Defendant's refrigerators manifested themselves over time, and were not therefore readily apparent to the reasonable consumer, there was no way for consumers, including Plaintiffs and Class members, to discover the defects and safety risks of Defendant's products except from Defendant itself.  Rather than provide consumers with complete and accurate information based on its exclusive and superior knowledge of the performance of its products, Defendant engaged in a continuing and consistent pattern and practice of deception and concealment, up to and through the Class Period, to mislead consumers into believing Defendant's products were defect-free and safe to use.  As a result, consumers had no knowledge of the true nature and extent of

the safety risks involved in continuing to use Defendant's products.  By such actions and omissions of material fact, Defendant affirmatively concealed Plaintiffs' causes of action and the claims of the members of the Class.

67.    Defendant had a duty to disclose material facts to Plaintiffs and the Class regarding the ongoing dangers of the gas absorption refrigerators, despite any retrofits, at all times before and during the Class Period.  Such disclosures should have been provided to Plaintiffs and Class members in the state in which they reside.  Each day in which Defendant did not do this constitutes an actionable offense in the state in which the Plaintiff and Class members reside.  Defendant's failure to disclose all material facts to Plaintiffs and the Class prevented Plaintiffs and the Class from being able to discover the truth about the dangerous products, despite reasonable diligence, and to take further steps to protect themselves, their property and to assert their rights.  As such, Plaintiffs' and each Class member's claims based on Defendant's omissions continue to accrue during the Class Period.

68.    The common omissions made by Defendant represent affirmative acts that were intended to prevent, and did in fact prevent Plaintiffs and members of the Class from discovering their potential claims.  Because of the nature of concealment and the testing needed to discover the inherent defects in Defendant's gas absorption refrigerators, Plaintiffs and members of the Class could not, even with the exercise of due diligence, have independently discovered their causes of action.  Defendant exclusively possessed this information.

69.    Each Plaintiff and each Class member had a right to receive a full and complete disclosure from Defendant in his or her state of residence, on each day during the Class Period, that the Dometic Defective Gas Absorption Refrigerator he or she owned or otherwise possessed

continued to present dangerous risks of fire despite any retrofit.  Defendant's failure to do this on each day during the Class Period was a separate actionable offense.

70.     Due to Defendant's ongoing and continuous concealment and deception, no reasonable consumer, including Plaintiffs, could have discovered the factual knowledge to assert these claims sooner.  Had Plaintiffs and the Class been provided all material facts regarding the refrigerator's inherent defects, risks, and safety hazards that Defendant exclusively possessed but omitted, withheld, and concealed from Plaintiffs and the Class, they would have been aware of the safety concerns present and acted differently, including but not limited to not purchasing (or retaining) a product equipped with a refrigerator/cooling unit containing the latent defects described within.

71.     As a result of Defendant's conduct, Plaintiffs and all Class members have been injured, incurred loss-of-money, and been damaged in a similar manner, in an amount which will be established at trial according to proof.

72.     Within the time period of any applicable statutes of limitation, Plaintiffs and the other Class members could not have discovered through the exercise of reasonable diligence that Defendant was failing to disclose defects and the true safety of the Defective Gas Absorption Refrigerators.  As such, discovery rule tolling applies.  Additionally, all applicable statutes of limitation have also been tolled by Defendant's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the Class Period.

73.     Based on this conduct and the allegations herein, Defendant is estopped from relying on any statute of limitations or other time-related defense in this action.  Defendant affirmatively misrepresented and actively concealed the true nature, character, and quality of the gas absorption refrigerators and, for the reasons described herein, was under a continuous duty to

disclose to Plaintiffs and the Class the facts it omitted and concealed.  Plaintiffs and the members of the Class reasonably relied upon Defendant's omissions (to the extent one can rely on statements not made) and active concealment and hence, could not bring the claims asserted herein sooner.  As a result of Defendant's fraudulent concealment, equity requires that the statute of limitations on Plaintiffs' and the putative Class members' claims be tolled.

## VI.    INTENT

74.    Defendant knowingly and intentionally committed the acts, concealments and material omissions alleged herein.  All actions and omissions by Defendant were willful and not the result of mistake or inadvertence.   At all times relevant, Defendant was aware of the defective nature of its gas absorption refrigerators.   Despite this, Defendant manufactured, marketed and sold, as fit for their intended purpose, its Defective Gas Absorption Refrigerators.  Defendant knowingly and intentionally undertook and directed that its respective business undertake the illicit practices and conceal the material facts which are the subject of this suit.

## VII.    CLASS ACTION ALLEGATIONS

### A.    Class Definitions

75.    Plaintiffs bring this action against Defendant pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following classes:

Nationwide Class:

> All persons in the United States who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator.  (the "Class")

Within the Class are the following Sub-Classes:

<u>The Florida State Sub-Class</u>

All persons who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator in the State of Florida.

(the "Florida State Sub-Class")

<u>The California State Sub-Class</u>

All persons in California who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator.

(the "California State Sub-Class")

<u>The Minnesota State Sub-Class</u>

All persons in Minnesota who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator.

(the "Minnesota State Sub-Class")

<u>The Georgia State Sub-Class</u>

All persons in Georgia who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator.

(the "Georgia State Sub-Class")

<u>The North Carolina State Sub-Class</u>

All persons in North Carolina who, during the Class Period, purchased or owned a Dometic Defective Gas Absorption Refrigerator.

(the "North Carolina State Sub-Class")

76.     The "Class Period" for the Class and any Sub-Class dates back ten (10) years, (or alternatively, the length of the longest applicable statute of limitations for any claim asserted on behalf of that Class or Sub-Class) from the date this action was commenced and continues through the present and the date of judgment.  Excluded from the Class and all Sub-Classes are: (a) any officers, directors or employees of Defendant; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; (d) any juror selected to hear this case; and, (e) anyone who has suffered personal injury as a result of a fire

caused by a Dometic Defective Gas Absorption Refrigerator. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

77. All requirements for class certification in Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3) (or any other applicable state or federal rule of civil procedure) are satisfied with respect to the Class and each of the Sub-Classes. Defendant subjected Plaintiffs and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.      Fed. R. Civ. P. 23(a) is Satisfied.**

78. **Numerosity**: The proposed classes are so numerous that joinder of all members would be impracticable. Defendant manufactures, sells, and installs millions of Defective Gas Absorption Refrigerators in Florida as well as nationwide. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendant, including its manufacturing, warranty registration, aftermarket sales, and recall campaign mailing list databases as well as the Original Equipment Manufacturer's sales records, dealership sales records and license and registration databases. The precise number of Class members for the classes numbers at least in the thousands and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

79. **Ascertainability:** The community of interest among Class members in the litigation is well-defined and the proposed classes are ascertainable from objective criteria. If

necessary to preserve the case as a class action, the court itself can redefine the Class and any Sub-Class.

80.     Membership in the Class and all Sub-Classes are readily determinable by reference to Defendant's manufacturing databases, warranty registration databases, aftermarket sales databases, recall/retrofit campaign mailing lists and databases, Original Equipment Manufacturer's ("OEM") manufacturing and sales records, dealership sales records, and, if necessary, license and registration databases of applicable states.

81.     **Typicality:** Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the other Class members.  Plaintiffs and other Class members all purchased or owned an RV or boat that contained a Dometic Defective Gas Absorption Refrigerator.  Dometic Defective Gas Absorption Refrigerators were, in relevant part, of uniform design, material and production for sale throughout the United States and Defendant's policies and procedures concerning repair or replacement of Defective Gas Absorption Refrigerators applied uniformly to all members of the Class.  Plaintiffs and Class members purchased or continued to use Dometic Defective Gas Absorption Refrigerators with the reasonable expectation that the products were defect-free, safe to use for their intended purpose, and that Defendant would abide by its warranties.  Plaintiffs and the members of the Class have all sustained injury in that: (1) their Dometic Defective Gas Absorption Refrigerators are defectively designed and present an unreasonable risk of fire; (2) they are required to pay additional sums to repair or replace their Dometic Defective Gas Absorption Refrigerators; (3) they are required to pay additional sums for the loss of use of their RVs and boats; and (4) the value of their RVs and boats has decreased due to Defendant's wrongful conduct.

82.     **Adequacy of Representation:** Pursuant to Rules 23(a)(4) and 23(g)(1), Plaintiffs are adequate representatives of the classes they seek to represent and will fairly and adequately protect the interests of that class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.  There is no hostility between Plaintiffs and the unnamed Class members.  Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

83.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and consumer fraud and product liability matters and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**C.      Fed. R. Civ. P. 23(b)(1) & (2) are Satisfied.**

84.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class.

85.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.  In particular, Defendant has concealed the true nature of the defects in the Dometic Defective Gas Absorption Refrigerators and has failed to properly repair the Dometic Defective Gas Absorption Refrigerators.  Instead, it initiated recall and retrofit campaigns that fail to address the underlying defects in the Dometic Defective Gas Absorption Refrigerators, fail to alleviate the risk of fire, and when engaged, require the Dometic Defective Gas Absorption Refrigerators to be replaced.

**D.      Fed. R. Civ. P. 23(b)(3) is Satisfied.**

86.     **Common Questions of Law or Fact Exist and Predominate Over Individual**

**Issues:** Pursuant to Rule 23(a) (2) and 23 (b)(3), common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members thereof.  Among the common questions of law and fact are as follows:

a.   Whether Defendant's Defective Gas Absorption Refrigerators have defects that create an unreasonable risk of fire under normal use and within their expected useful lifespan;

b.   Whether Defendant had knowledge of the defects in the Dometic Defective Gas Absorption Refrigerators;

c.   Whether Defendant concealed the defects in the Dometic Defective Gas Absorption Refrigerators;

d.   Whether Defendant had a duty to disclose material facts to the Class about the defects in the Dometic Defective Gas Absorption Refrigerators;

e.   Whether installation of the Thermo Disc, Thermal Fuse and/or other parts satisfied Defendant's warranty obligations with respect to the Dometic Defective Gas Absorption Refrigerators;

f.   Whether Defendant's omissions regarding the Dometic Defective Gas Absorption Refrigerators were likely to deceive Class members;

g.   Whether Defendant's business practices, including the manufacture and sale of the Dometic Defective Gas Absorption Refrigerators that Defendant has failed to adequately investigate, disclose, and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

h.   Whether Defendant breached the implied warranty of merchantability because the Dometic Defective Gas Absorption Refrigerators were not fit for their ordinary purpose due to

42

the unreasonable risk of fire and explosion;

      i.   Whether Plaintiffs and Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief;

      j.   The amount and nature of such relief to be awarded to Plaintiffs and the Classes; and

      k.   Whether any applicable statutes of limitations should be tolled due to Defendant's concealment of the defects in the Dometic Defective Gas Absorption Refrigerators.

87.    **Superiority:** Pursuant to Rule 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the classes would impose heavy burdens upon the courts and Defendant, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to those classes. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

**COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, _et seq._)**

88.    Plaintiffs incorporate by reference and re-allege all paragraphs alleged herein.

89.    The Magnuson-Moss Warranty Act provides a private right of action by purchasers of consumer products against manufacturers or retailers who, among other things, fail to comply with the terms of the written, express, or implied warranties.  _See_ 15 U.S.C. § 2310(d) (1) (Remedies in consumer disputes).  As alleged above, Defendant failed to comply with the terms of its written, express, or implied warranties.

90.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332 (a)-(d).

91.    Plaintiffs and the Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

92.    Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

93.    The Defective Gas Absorption Refrigerators are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

94.    15 U.S.C. § 2310(d) (1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

95.    Defendant's Defective Gas Absorption Refrigerators' implied warranties are implied warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

96.    Defendant breached these warranties as described in more detail above, by generally not repairing or replacing the Defective Gas Absorption Refrigerators design, materials and workmanship defects; providing the Defective Gas Absorption Refrigerators in un-merchantable condition, *i.e.*, unfit for the purpose for which gas absorption refrigerators are intended to and reasonably expected to be used, and creating an unreasonable risk of fire and explosion when used as intended; providing Defective Gas Absorption Refrigerators that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

97.    Plaintiffs and Class members have had sufficient direct dealings with either Defendant or its agents (dealerships or RV/boat manufacturers) to establish privity of contract.

Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendant and its dealers or RV/boat manufacturers; specifically, they are the intended beneficiaries of Defendant's implied warranties. The dealers and manufacturers were not intended to be the ultimate consumers of the Defective Gas Absorption Refrigerators and have no rights under the warranty agreements provided; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because Plaintiffs' and Class members' Defective Gas Absorption Refrigerators are dangerous instrumentalities due to the aforementioned defects and nonconformities.

98.    Plaintiffs have satisfied any obligations under 15 U.S.C. § 2310(a) (3), and also provided Defendant an opportunity to cure, even though no such opportunity is required in these circumstances.

99.    Plaintiffs have discussed the Defective Gas Absorption Refrigerators with Defendant and/or its agents without their concerns being resolved.  Plaintiffs have contacted their dealerships and/or manufacturers to discuss their situation without adequate resolution.

100.    Requiring an informal dispute settlement procedure, or affording Defendant a reasonable opportunity to cure its breach of written warranties, would be unnecessary and futile. At the time of sale of each RV or boat containing a Defective Gas Absorption Refrigerator, Defendant knew, should have known, or was reckless in not knowing of their omissions concerning the inability of the Defective Gas Absorption Refrigerators to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement—whether under the Magnuson-Moss Warranty Act or

otherwise—that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendant a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

101.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  For each Class member the amount in controversy at least exceeds the sum of $1,000, exclusive of interest and costs, which is the minimum cost to replace the Defective Gas Absorption Refrigerators. Plaintiffs have also lost money as a result of having to pay hundreds of dollars to repair or replace their Defective Gas Absorption Refrigerators after Defendant's failed attempts to fix the defects.

102.    Plaintiffs have also lost money as a result of having to pay hundreds of dollars associated with loss of use of their RVs or boats.  Finally, Plaintiffs have lost money because they paid for a safe and useful gas absorption refrigerator for their RV or boat and the value of their RV or boat has decreased because of the installed Defective Gas Absorption Refrigerator.

103.    Plaintiffs seek all damages, including the diminution in value of their RVs/boats, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d) (2), Plaintiffs and the other Class members seek a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

104.    Further, Plaintiffs and the Class members are also entitled to equitable relief under 15 U.S.C. § 2310(d) (1). Based on Defendant's continuing failures to fix the known

dangerous defects, Plaintiffs seek a declaration that Defendant has not adequately implemented its recall commitments and requirements and general commitments to fix its failed processes, and injunctive relief in the form of judicial supervision over the recall process is warranted. Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and Class members to recover out-of-pocket costs incurred in attempting to rectify their Defective Gas Absorption Refrigerators.

## COUNT II

### Violation of State Consumer Protection Statutes

105.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though fully stated herein.

106.     Plaintiffs bring this action on behalf of themselves and on behalf of the Class and all Sub-Classes against Defendant under the state consumer protection statutes referenced below.

107.     This claim is based on Defendant's deceptive and misleading conduct and common omissions of material fact.

108.     Each of the Plaintiffs and proposed Class members is a consumer, purchaser, or other person entitled to the protection of the consumer protection laws of the state in which they purchased and/or owned one or more of Dometic Defective Gas Absorption Refrigerators, either as separate products, or as installed in recreational vehicles, for personal, family, or household purposes.

109.     Dometic Defective Gas Absorption Refrigerators are goods, products, consumer goods, merchandise, property, and/or assets as those terms are defined under the applicable state statutes identified below.

110.    Each Dometic Defective Gas Absorption Refrigerator owned by Class members contains an inherent defect, which is substantially certain to result in malfunction during the useful life of the product when used as reasonably anticipated and intended.

111.    By manufacturing, marketing and distributing for sale the Dometic Defective Gas Absorption Refrigerators, Defendant engaged in trade or commerce, the sale of goods, and/or practices affecting commerce within the meaning of the applicable state consumer protection acts set forth below.

112.    By failing to disclose and concealing the defective nature of the gas absorption refrigerators from Plaintiffs and prospective Class members, Defendant has engaged in deceptive, unfair, fraudulent, and misleading acts and practices in connection with consumer transactions, as Defendant has represented that its refrigerators had characteristics and benefits that they do not have, and represented that its refrigerators were of a particular standard, quality or grade when they were of a lesser standard, quality, or grade.

113.    Defendant knew that its Dometic Defective Gas Absorption Refrigerators were defectively designed, would fail prematurely, and were not suitable for their intended use. Defendant also knew that the design defects in its gas absorption refrigerators created and constituted a serious safety and fire hazard.  Further, Defendant knew that the design defects and safety hazards in its gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs readily available in the market.

114.    Notwithstanding Defendant's knowledge of the design defects and inherent safety risks in its gas absorption refrigerators, and its knowledge of alternate designs to eliminate the defects and safety hazards, Defendant failed and refused to alter its gas absorption refrigerator design, and instead engaged in a continuous pattern of deception and concealment, designed to

48

mislead Plaintiffs and members of the Class into believing that its gas absorption refrigerators were safe, when in fact they were, and continue to be, dangerously defective.

115.    Defendant, at all times up to the filing of this Complaint, has engaged in a pattern of concealment and misrepresentation designed to mislead Plaintiffs and all members of the Class into believing that Defendant's refrigerators they owned were either free of defects, or that any defects had been fully and completely eliminated through Defendant's retrofit campaigns. As a result of Defendant's concealment and misrepresentation, Plaintiffs did not know, and could not through the exercise of reasonable diligence be expected to know, of the defects and safety risks involved in their use of Defendant's products, or of Defendant's fraudulent, unlawful and unfair conduct, as outlined above.

116.    Through the above-described omissions, Defendant has engaged in deceptive and misleading business practices including, but not limited to:

       a.    misrepresenting by omission that the gas absorption refrigerators at issue have characteristics, uses, benefits, and qualities which they do not have;

       b.    misrepresenting by omission that the gas absorption refrigerators at issue are of a particular standard, quality, and grade when they are not;

       c.    misrepresenting by omission that a transaction involving the gas absorption refrigerators at issue confers or involves rights, remedies, and obligations which it does not; and,

       d.    misrepresenting by omission that the subject of a transaction involving the gas absorption refrigerators at issue has been supplied in accordance with a previous representation when it has not;

       e.    failing to disclose the dangerous safety defect inherent in the gas

absorption refrigerators at issue, when that was a material fact reasonable consumers would want to know about.

117.    Despite reasonable diligence, neither Plaintiffs, nor any reasonable consumer acting in the ordinary course of use, including Class members, could learn the facts Defendant knowingly concealed from the general public.  The defective boiler tubes and safety plug are not readily apparent or visible to Class members using the refrigerators as intended in the ordinary course.  The only time a fire risk becomes apparent is when it occurs.  By that time, it is too late for Plaintiffs and Class members, like other reasonable consumers, to take practical steps to protect themselves and their property from fire danger.

118.    Defendant's unfair and deceptive acts and/or practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

119.    Defendant knew that its gas absorption refrigerators were defectively designed and/or manufactured, would fail prematurely, and were not fit for their intended purpose. Despite this, Defendant marketed and sold these products to the Class for financial gain.

120.    Defendant was under an ongoing and continuous duty to Plaintiffs and the Class members to disclose the defective nature of its refrigerators because:

      a.    Defendant was in a superior position to know the true state of facts about the safety defects in its gas absorption refrigerators;

      b.    Plaintiffs and Class members could not reasonably have been expected to learn or discover that the refrigerators had dangerous safety defects until they manifested failure;

      c.      Defendant knew that Plaintiffs and Class members could not reasonably have been expected to learn or discover the safety defects in the refrigerators; and

      d.      The Safety Act requires disclosure of safety defects for a period of at least 10 years.

121.    As described herein, Defendant has engaged in consumer-oriented conduct that was materially misleading and generally directed at the consuming public.

122.    Proof of individual reliance or individual injury on the part of absent Class members is not required to establish a basis for relief under many of the consumer protection statutes Plaintiffs seek to apply.  Further, Plaintiffs claims are based on omissions of material fact.

123.    To the extent that reliance is required for relief under any of the consumer protection statutes Plaintiffs seek to apply, it is proper to presume reliance on the part of Plaintiffs and Class members due to Defendant's omissions and concealment of material facts. Reasonable consumers would expect to be warned by a products manufacturer of all facts regarding serious dangers, as exist here.  Defendant deliberately withheld information from the Class that severe fires could result from the use of Defendant's gas absorption refrigerators, which could cause serious bodily harm or death.  Given the severity of the consequences, which Defendant failed to disclose, the materiality of such an omission cannot be questioned.

124.    In failing to disclose the defects in their product, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

125.    The facts concealed or not disclosed by Defendant to Plaintiffs and members of the Class are material in that reasonable consumers would have considered them to be important

in deciding whether to purchase (or retain) Defendant's products or pay a lesser price. Had Plaintiffs and the Class members known of true extent of the defective nature of Defendant's products, they would not have purchased (or retained) the products, or would have paid less for them.

126.    Plaintiffs and Class members reasonably expected that Defendant's gas absorption refrigerators would function properly and not be susceptible to the hazards described herein for the life of their recreational vehicles. That is the reasonable and objective consumer expectation for gas absorption refrigerators.

127.    Plaintiffs purchased RV's and/or boats with Dometic Defective Gas Absorption Refrigerators with the understanding that the refrigerators would function safely as warranted and without unreasonable risk of fire when sold. Defendant had specific information about dangerous defects in the refrigerators that affected their ability to function as warranted, and it did not disclose that material information to Plaintiffs and the Class but instead concealed such information. Defendant has had multiple opportunities to disclose the full truth about the defects and the continuing fire risks to Plaintiffs and the Class but has failed to do so.

128.    To the extent required, the Plaintiffs have provided Defendant pre-filing notice under each of the consumer protection acts that require such notice and/or limited their claims.

129.    Defendant's unlawful, unfair, and fraudulent conduct, described above, presents a continuing threat to Plaintiffs, the members of the Class, and to the general public. Unless enjoined, Defendant will continue to place dangerously defective gas absorption refrigerators into the stream of commerce, and will continue to conceal and mislead consumers regarding the inherent defects and safety risks associated with use of the products. Unless enjoined, Defendant will continue to conceal and mislead owners of its gas absorption refrigerators into believing that

its products are safe, or that any risks have been completely eliminated through Defendant's fraudulent and ineffective recall and retrofit campaigns.  Such conduct presents a continuing threat to owners of Defendant's products, in that they will be unknowingly exposed to serious safety risks through the continued use of Defendant's product, including the risk of property damage, injury and death.  Defendant's conduct also presents a continuing risk to members of the public in that the risk of property damage, injury, and death by fire extends beyond the owners of Defendant's products.  Injunctive relief is therefore appropriate and necessary to eliminate a serious safety risk to Plaintiffs, the Class and members of the general public.

130.    Plaintiffs assert claims, based on the above-described conduct, on behalf of the following Sub-Classes under the following statutes:

131.    The Florida State Sub-Class: Defendant's practices, as alleged, were and are in violation of Fla. Stat. §§501.201 *et seq.*

132.    The California State Sub-Class: Defendant's practices, as alleged, were and are in violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

133.    The Minnesota State Sub-Class: Defendant's practices, as alleged, were and are in violation of Minn. Stat. 325F.69 *et seq.*, Minn. Stat. 325D.13,and Minn. Stat. 326D.44 *et seq.*

134.    The North Carolina State Sub-Class: Defendant's practices, as alleged, were and are in violation of N.C. Gen. Stat. §§75-1.1 *et seq.*

135.    The Florida Sub-Class includes all Class members that purchased and/or owned Dometic Defective Gas Absorption Refrigerator in the State of Florida (regardless of the class members residence).   All such class members assert common claims against Defendant under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Fla. Stat. §§501.201 *et seq.*. The deceptive and misleading acts and omissions complained of were conducted, managed and

directed by Defendant in and from its offices in Florida. Defendant engaged in consumer-oriented activities as its actions caused consumers in the Classes injury or harm to the public interest. FDUTPA operates to protect consumers, regardless of state of residency, from persons and companies performing unlawful and misleading acts in and from Florida which emanate to and harm consumers both inside and outside of Florida. Hence, all Class members that purchased and/or owned Dometic Defective Gas Absorption Refrigerator in the State of Florida have common claims against Defendant for violation of FDUTPA.

136.    As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiffs and Class members have suffered and will continue to suffer actual damages in the form of diminished value for their RV's or boats.    Plaintiffs and Class members were misled into purchasing and owning dangerously defective gas absorption refrigerators that cannot be used safely for their intended purpose, and which therefore need to be replaced. Defendant has failed and refused, and continues to fail and refuse, to acknowledge its responsibility for placing dangerously defective products into the stream of commerce, and has further failed and refused to eliminate the defects and render its products safe to use.   Through its wrongful conduct, as described above, Defendant has foisted the responsibility – and the costs – of manufacturing a safe product, or rendering its defective product safe, onto the Plaintiffs and Class members.  The resulting damage and injury is common to all Plaintiffs and Class members, and can only be adequately remedied through the common, class-wide relief sought herein.

137.    Plaintiffs and the Class members are entitled to legal and equitable relief against Defendant, including injunctions, actual damages, rescission, restitution, attorneys' fees, costs of suit, prejudgment interest and other relief as appropriate.[2]

**WHEREFORE,** Plaintiffs, on behalf of themselves, the Class and any Sub-Classes, demand judgment against Dometic for compensatory damages, pre- and post-judgment interest, attorneys' fees, injunctive and declaratory relief, restitution, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

## COUNT III
### Breach of Implied Warranty

138.    Plaintiffs hereby incorporate by reference every other paragraph of this Complaint as though fully stated herein.

139.    Defendant was at all relevant times the manufacturer, distributor, warrantor, and/or seller of the defective gas absorption refrigerators.  Defendant knew or had reason to know of the specific use for which its gas absorption refrigerators were purchased.

140.    At the time Defendant marketed and otherwise placed its Dometic Defective Gas Absorption Refrigerators into the stream of commerce, it knew that the refrigerators were going to be installed in recreational vehicles and boats and that consumers, such as Plaintiffs and the Class members were the foreseeable users of the product, for personal and recreational use. Defendant also knew that consumers, including Plaintiffs and members of the Class, would have no ability or opportunity to inspect their gas absorption refrigerators for defects, but instead would rely on Defendant's skill and judgment to furnish safe and reliable gas absorption

---

[2]   Until such time as the Complaint is amended, the California Sub-Class does not assert claims under the CLRA for damages, only for injunctive and other relief that may be available.

refrigerators that were suitable for their particular purpose and free of dangerous defects that could start fires.

141.     To the extent required, upon information and belief, Plaintiffs and all Class members, if not in privity with Defendant, are third-party beneficiaries of the contracts entered into between the manufacturers of Plaintiffs' and Class members' RVs and/or the installing contractors, and/or agents and Defendant.

142.     To the extent required, upon information and belief, Plaintiffs and all Class members are intended third-party beneficiaries of the contracts entered into between Defendant and the manufacturers of Plaintiffs' and Class members' RVs and/or the installing contractors, because Plaintiffs and Class members received the direct benefit of those contracts.  Defendant and the manufacturers of Plaintiffs' and Class members' RVs and/or the installing contractors intended for Plaintiffs and Class members to directly benefit from any contracts given that the Defendant's gas absorption refrigerators were to be installed on Plaintiffs' and Class Members' RVs and boats.

143.     Defendant was aware of the particular purpose that each Plaintiff and Class member had for the Dometic Defective Gas Absorption Refrigerators obtained – to have a safe, properly working refrigeration unit in their RV or boat that did not present a dangerous risk of fire.  Defendant failed to supply such gas absorption refrigerators as, as described, the refrigerators present a dangerous fire risk.

144.     Upon information and belief, Defendant and all manufacturers of RV's (and/or their distributors/dealers and other agents) has contracts that contain the implied warranty of merchantability where any and all Dometic Defective Gas Absorption Refrigerators supplied by Defendant were to be fit for ordinary purposes, safe, not dangerous and susceptible to fire.

145.    As the intended consumers and ultimate users of the Dometic Defective Gas Absorption Refrigerators, Plaintiffs and the Class are intended third-party beneficiaries of any contracts between Defendant and the RV manufacturers (and/or their dealers/distributors/agents), from whom Plaintiffs obtained RV's containing Dometic Defective Gas Absorption Refrigerators which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe, not dangerous and susceptible to fire.  Plaintiffs and the Class, not any dealership, are the parties intended to be benefited by any such contract because they are the people actually using the refrigerators in the manner intended.

146.    Plaintiffs and members of the Class relied on Defendant's skill and judgment to furnish safe and reliable gas absorption refrigerators that were suitable for their particular purpose and free of dangerous defects that could start fires.

147.    Defendant provided Plaintiffs and members of the Class with an implied warranty that its gas absorption refrigerators and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold and not dangerous and susceptible to causing fires. However, the gas absorption refrigerators Defendant provided to Plaintiffs and the Class are not fit and suitable for their ordinary purpose because, *inter alia*, they contained design and manufacturing defects that were likely to create and/or enhance fires, with the potential of causing serious damage, injury and/or death.

148.    Defendant impliedly warranted that the gas absorption refrigerators were of merchantable quality and fit for such use, did not contain dangerous defects and were not susceptible to causing fires.  This implied warranty included, among other things: (1) a warranty that the gas absorption refrigerators manufactured, supplied, distributed, and/or sold by Defendant were safe and reliable for their intended purpose; and (2) a warranty that their gas

absorption refrigerators would be fit for their intended use while the gas absorption refrigerators were being operated.

149.    Defendant's gas absorption refrigerators supplied to Plaintiffs and the Class did not possess the basic degree of fitness for ordinary use due to the defects described which created unreasonable risk of fire and danger.   The defects are so basic that they render the refrigerator (and the RV containing them) unfit for ordinary purposes.   As such, they are not merchantable.

150.    The implied warranties were made not only at the time of sale and when the refrigerators were placed into the stream of commerce, but also at the time of the last recalls and the retrofits.  At those times, Defendant impliedly warranted that the gas absorption refrigerators were of merchantable quality and fit for such use, did not contain further dangerous defects and were not susceptible to causing fires.  Continuing through the present, Defendant continues to hold out and market the gas absorption refrigerators as safe and fit.  Yet as shown by recent fires, which continue through the present, regardless of any recalls, retrofits or replacements, the refrigerators are still not safe, are dangerous and are susceptible to causing fires.

151.    Contrary to the applicable implied warranties, Defendant's gas absorption refrigerators at the time of sale and thereafter were not fit for their ordinary and intended purpose.  Instead, Defendant's gas absorption refrigerators are and continue to be defective and dangerous.

152.    At all times, Plaintiffs and the Class members used the gas absorption refrigerators in the manner that was intended for use.

153.    As a direct and proximate result of Defendant's breach, Plaintiffs and members of the Class have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial according to proof.

154.    Plaintiffs and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

**WHEREFORE** Plaintiff and the Florida Sub-Class seek damages and other legal and equitable relief including, at their election, the purchase price of their Defective Gas Absorption Refrigerators, or the overpayment or diminution in value of their RVs or boats as well as costs and attorneys' fees.

### COUNT IV
### Violations of Song-Beverly Consumer Warranty Act, California Civil Code §1790, *et seq*.
### (On Behalf of the California Plaintiffs and the California State Sub-Class

155.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein

156.    Plaintiffs bring this claim individually and on behalf of all others similarly situated in the California State Sub-Class.

157.    Plaintiffs and all members of the California State Sub-Class are consumers who purchased and/or owned one or more of Defendant's Defective Gas Absorption Refrigerators, either as separate products, or as installed in recreational vehicles as original equipment. Defendant's refrigerators were purchased primarily for family and household use, and said products were therefore "consumer goods" as that term is defined in the Song-Beverly Consumer Warranty Act (hereinafter the "ACT"), California Civil Code §1790, *et seq*.

158.    Plaintiffs and all members of the California State Sub-Class are "buyers" of consumer goods under the ACT.

159.    Defendant is a "manufacturer" and/or "distributor" under the ACT.

160.     Defendant offered, sold, distributed and otherwise placed its gas absorption refrigerators into the stream of commerce accompanied by express warranties that the products were reliable and free of defects.  In addition to these express warranties, the sale of Defendant's gas absorption refrigerators was accompanied by Defendant's implied warranties that its refrigerators were merchantable, and fit for the purpose for which they were intended.  However, Defendant's gas absorption refrigerators are not fit for their ordinary purpose.

161.     The above-described defects and non-conformities to warranty of Defendant's gas absorption refrigerators manifested themselves within the applicable express warranty period, and/or within the applicable express warranty period as extended pursuant to California Civil Code §1795.6, and substantially impaired the use, value and/or safety of the products.

162.     Plaintiffs and members of the California State Sub-Class delivered Defendant's gas absorption refrigerators to repair facilities authorized by Defendant to effect repairs and correct the above-described defects and nonconformities in Defendant's products.

163.     Defendant, and its agents, were unable to conform Plaintiffs' and Class members' refrigerators to the applicable express and implied warranties after a reasonable number of attempts, including attempted repairs and retrofits pursuant to product safety recalls initiated by Defendant.

164.     Notwithstanding Plaintiffs' and Class members' entitlement under the ACT and demand by Plaintiffs and Class members therefore, Defendant has failed to either promptly replace Plaintiffs' and Class members' gas absorption refrigerators with a new, non-defective and conforming refrigerator, or promptly to make restitution in accordance with the ACT.

165.     Defendant's failure to remedy the defects in its gas absorption refrigerators, described above, or to replace said refrigerators or provide restitution to Plaintiffs and Class

members, constitutes a breach of Defendant's obligations to Plaintiffs and Class members under the ACT.

166.    In addition to the acts described above, Defendant has engaged in a persistent pattern and practice of denying warranty coverage to consumers to repair and/or replace Defendant's defective products.  Defendant sells its gas absorption refrigerators with three different express warranties – a one (1) year limited warranty covering repair or replacement of defective parts; a two (2) year limited warranty for labor to repair or replace defective parts; and, a three (3) year limited warranty that its product is free from defects.  Under the Act, the expiration of all said express warranties is extended so long as repairs and/or service performed on a manufacturer's nonconforming goods does not remedy the nonconformity for which the repair or service was performed.  As described above, Defendant's gas absorption refrigerators were defective when sold to Plaintiffs and all members of the California State Sub-Class, and were therefore nonconforming goods.  Notwithstanding any repair or service by or on behalf of Defendant, the nonconformities were never eliminated, and under California law, Defendant's express warranties therefore never expired.  Nevertheless, Defendant engaged in a pattern and practice of representing to Plaintiffs, and to members of the Sub-Class, that the latter's warranties had not been extended, but had expired.  Defendant engaged in this conduct with the intent of shirking its warranty obligations, and passing the cost of its defective products onto consumers.  This conduct is a violation of California Civil Code §1795.6, and constitutes a breach of Defendant's obligations to Plaintiffs and Class members under the ACT.

167.    In addition to the acts described above, Defendant has instituted a clandestine policy and procedure to conceal the true nature and scope of the defects and risks in its gas absorption refrigerators by paying some or all of the costs to replace or retrofit the refrigerators

of those owners who are the most vocal and persistent in seeking those remedies, including those owners who threaten legal action, notwithstanding Defendant's stated position that the cost of replacement or retrofit of refrigerators that are outside Defendant's warranty period is on the consumer. Defendant has not, and does not, disclose its policy of extending its warranty coverage to those consumers who complain the most, but keep such policy confidential, using terms such as "goodwill" to mask the secret exceptions to its warranty policy. This conduct is a violation of the Secret Warranty Law, Cal. Civ. Code §1795.90(d), and constitutes a breach of Defendant's obligations to Plaintiffs and Class members under the ACT.

168. In addition to the acts described above, Defendant has compelled Plaintiffs and Class members to incur costs and expenses to transport, convey, and deliver Defendant's Defective Gas Absorption Refrigerators to authorized repair facilities, and in many instances to pay some or all of the material and/or labor costs incurred in Defendant's unsuccessful attempts to repair and correct its products' defects and nonconformities. In addition, in many instances Defendant has not created or maintained sufficient inventory of parts and supplies to repair the defects and nonconformities in its gas absorption refrigerators so that repairs can be accomplished in a reasonable time, i.e. within thirty (30) days. This conduct is a violation of California Civil Code §1793.2, and constitutes a breach of Defendant's obligations to Plaintiffs and Class members under the ACT.

169. Plaintiffs and Class members are justified and entitled to revoke their acceptance of Defendant's gas absorption refrigerators under the ACT. Plaintiffs and Class members intend that service of the Summons and Complaint in this action shall serve as notice that Plaintiffs and Class members have revoked acceptance of Defendant's gas absorption refrigerators, and will

tender said products on condition that Defendant restore to Plaintiffs and all Class members the consideration advanced and/or paid.

170.     Plaintiffs and Class members are justified and entitled to rescission of the sale regarding Defendant's gas absorption refrigerators, and will tender the refrigerators on condition that Defendant restore to Plaintiffs and Class members all consideration advanced or paid by Plaintiffs and Class members.   Defendant refuses, and continues to refuse, to return said consideration or to recognize that said sale has been rescinded.

171.     As a direct and proximate result of Defendant's violations of the ACT, Plaintiffs and Class members are entitled to reimbursement of the purchase price paid for Defendant's gas absorption refrigerators, less that amount directly attributable to use prior to discovery of the nonconformities, in an amount which will be established according to proof.

172.     As a further direct and proximate result of Defendant's violations of the ACT, Plaintiffs and Class members are entitled to all incidental, consequential and general damages they have suffered or sustained, in an amount that will be established at trial according to proof.

173.     As a further direct and proximate result of Defendant's violations of the ACT, Plaintiffs and Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, reasonable incurred in connection with the commencement and prosecution of this action, in an amount which be established at trial according to proof.

**COUNT V**

**Violation of California Unfair Competition Law,
California Business and Professions Code §17200 *et. seq.*
(On Behalf of the California Plaintiffs and the California State Sub-Class Only)**

174.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as though stated herein.

175.    Plaintiffs Acosta bring this claim individually and on behalf of all others similarly situated in the State of California and the California Sub-Class.

176.    The State of California has enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and/or false advertising. Those statutes further allow consumers to bring private and/or class actions. These statutes are:

        a.    California Consumer Legal Remedies Act, Cal. Civ. Code §1750, *et. seq.;*
        b.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et.*
            *seq.*, and Cal. Bus & Prof. Code §17500, *et. seq.*

177.    In addition, the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* (UCL) declares that any act or business practice that is forbidden by law is unlawful and a violation of the UCL.

178.    California Business & Professions Code §17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

179.    Each of the Plaintiffs and proposed Class members in the California State Sub-Class is a consumer, purchaser, or other person entitled to the protection of the above-described consumer protection laws.

180.    Plaintiffs suffered both injury-in-fact and lost money as a result of Defendant's conduct and practices which are described herein and challenged.

181.    Defendant's Defective Gas Absorption Refrigerators constitute products to which these consumer protection statutes apply.

182.    To the extent required, Plaintiffs in the California State Sub-Class have provided Defendant notice under each of the above listed statutes.

183.    Defendant's conduct, as described above, constitutes unlawful, unfair and fraudulent practices under the UCL.

184.    Defendant's unlawful practices include, but are not limited to:

    a.    Violations of the Song-Beverly Consumer Warranty Act, Cal. Civil Code §§1793.2, 1795.6, 1795.90(d);

    b.    Violations of Cal. Civil Code §1770 (a) (2), (3), (5), (7), (14) and (16); and,

    c.    Breach of express and implied warranties.

185.    Defendant committed unfair and/or fraudulent business practices by the acts alleged herein, including, but not limited to:

    a.    Designing, manufacturing, assembling, marketing, distributing, selling and otherwise placing into the stream of commerce dangerously defective gas absorption refrigerators that posed serious safety risks to users of the product, and members of the general public;

    b.    Making material omissions which led consumers to believe that Defendant's gas absorption refrigerators were free from defects, when in fact Defendant knew that they contained design defects, even after recall and/or retrofitting, that created a substantial risk of fire, injury and death when the product was used for its normally intended purpose;

c.      Conducting repeated manufacturer-initiated recall and retrofit campaigns that were intentionally misleading in an effort to minimize and conceal the nature and scope of the defects and continuing risks in Defendant's products, including the ongoing serious safety risks arising from said defects;

d.      Conducting retrofit campaigns to install various devices onto Defendant's gas absorption refrigerators that were represented to "fix" the defects when in fact, the retrofit devices did not address the defects at all, or the propensity of the defects to cause and/or enhance fires – material fact omitted;

e.      Concealing the fact that the retrofit devices installed on Defendant's products were not only ineffective to stop fires, but were in fact designed by Defendant to turn its defective products into a new source of profits, by rendering its refrigerators unrepairable, thereby requiring consumers to purchase – at their cost – another of Defendant's gas absorption refrigerators.

186.    Defendant knew that its gas absorption refrigerators were defectively designed, would fail prematurely, and were not suitable for their intended use.  Defendant also knew that the design defects in its gas absorption refrigerators created and constituted a serious safety and fire hazard.  Further, Defendant knew that the design defects and safety hazards in its gas absorption refrigerators could be substantially decreased, if not totally eliminated, by the adoption of alternate designs readily available in the market.

187.     Notwithstanding Defendant's knowledge of the design defects and inherent safety risks in its gas absorption refrigerators, and its knowledge of alternate designs to eliminate the defects and safety hazards, Defendant failed and refused to alter its gas absorption refrigerator design, and instead engaged in a continuous pattern of deception and concealment, designed to mislead Plaintiffs and other consumers, including those in the California State Sub-Class, into believing that its gas absorption refrigerators were safe, when in fact they were, and continue to be, dangerously defective.

188.     Defendant, at all times up to the filing of this Complaint, has engaged in a pattern of concealment designed to mislead Plaintiffs and all members of the California State Sub-Class into believing that Defendant's refrigerators they owned were either free of defects, or that any defects had been fully and completely eliminated through Defendant's retrofit campaigns.  As a result of Defendant's concealment, Plaintiffs did not know, and could not through the exercise of reasonable diligence be expected to know, of the defects and safety risks involved in their use of Defendant's products, or of Defendant's fraudulent, unlawful and unfair conduct, as outlined above.

189.     Plaintiffs and all members of the California State Sub-Class reasonably expected Defendant's gas absorption refrigerators to function properly for the life of their recreational vehicles.

190.     Defendant's sale of dangerously defective gas absorption refrigerators, its failure to eliminate the design defects and safety hazards inherent in said products, and its pattern of deception and concealment of said defects and risks, did not have any legitimate utility, and even if it did, the utility was substantially outweighed by the grave consequences such conduct

exposed Plaintiffs and members of the Sub-Class to, i.e. the risk of fire and the potential for serious damage, injury and death.

191.    Defendant's conduct, as alleged herein, was immoral, unethical, oppressive, unscrupulous, in violation of public policy and substantially injurious to Plaintiffs in the California State Sub-Class, and constituted violations of the various consumer protection statutes outlined above.

192.    Plaintiffs and other members of the California State Sub-Class relied on Defendant's actions and conduct (including, to the extent possible, Defendant's omissions and conduct failing to disclose material facts regarding product defects and risks), and believed that they were receiving gas absorption refrigerators that were free from or cured of any defects.

193.    Plaintiffs and other members of the California State Sub-Class have suffered injury in fact and lost money and property as a result of Defendant's unlawful, unfair and/or fraudulent practices, in that, among other things:

194.    Plaintiffs and other members of the California State Sub-Class have been and/or will be subject to economic damages including, but not limited to, the cost of any repairs, service, modifications and retrofitting necessary to allow their gas absorption refrigerators to be operated safely, without risk and/or potential of fire;

    a.    Plaintiffs and other members of the California State Sub-Class have been and/or will be subject to further economic damage through the loss of use of their recreational vehicles while Defendant's defective products are being rendered safe to use, or replaced;

b.   Plaintiffs and other members of the California State Sub-Class have been deprived of making an informed decision about the recreational vehicle they purchased; and,

c.   The recreational vehicles purchased by Plaintiffs and other members of the California State Sub-Class are worth less in the marketplace as a result of Defendant's conduct.

195.   Plaintiffs and other members of the California State Sub-Class would not have purchased (or retained) Defendant's gas absorption refrigerator, or a recreational vehicle equipped with one, had they known the truth and are thus entitled to a full or partial refund as allowed under each of the state laws alleged herein.

196.   Defendant's unlawful, unfair, and fraudulent conduct, described above, presents a continuing threat to Plaintiffs, the members of the California State Sub-Class, and to the general public.   The risk of fire and/or other damage in the gas absorption refrigerators remains, regardless of whether the unit has been recalled and subjected to any retrofit.   Unless enjoined, Defendant will continue to place dangerously defective gas absorption refrigerators into the stream of commerce, and will continue to conceal and mislead consumers regarding the inherent defects and safety risks associated with use of the product.   Unless enjoined, Defendant will continue to conceal and mislead owners of its gas absorption refrigerators into believing that its products are safe, or that any risks have been completely eliminated through Defendant's fraudulent and ineffective recall and retrofit campaigns.   Such conduct presents a continuing threat to owners of Defendant's products, in that they will be unknowingly exposed to serious safety risks through the continued use of Defendant's products, including the risk of property damage, injury and death.   Defendant's conduct also presents a continuing risk to members of

the public in that the risk of property damage, injury and death by fire extends beyond the owners of Defendant's products, to anyone living next door, camping in the same campground, or driving on the same highway as an owner of a recreational vehicle containing one of Defendant's gas absorption refrigerators.  Injunctive relief is therefore appropriate and necessary to eliminate a serious safety risk to Plaintiffs, all members of the California State Sub-Class, and members of the general public.

197.    Accordingly, Plaintiffs and members of the California State Sub-Class seek an injunction that requires Defendant to immediately cease the unfair, unlawful and fraudulent business acts alleged herein, and to immediately take all necessary actions to cure the design and/or manufacturing defects inherent in its gas absorption refrigerators so that the refrigerators can be designed and manufactured, and/or effectively retrofitted, to operate safely.  Plaintiffs further seek an order that Defendant establish a warranty program to provide the Plaintiffs and each Class member with a non-defective gas absorption refrigerator, and that Defendant pay all costs associated with the warranty program, including, but not limited to, all labor and material costs involved in removing and replacing Defendant's defective refrigerators in Plaintiffs' and Class members' RVs.  Plaintiffs also seek restitution on behalf of all members of the California State Sub-Class.  Plaintiffs and other members of the California State Sub-Class are entitled to the relief set forth below.

**COUNT VI**

**Money Had and Received/Unjust Enrichment**
**(On Behalf of All Plaintiffs and the Class/Sub-Classes)**

198.    Plaintiffs incorporate by reference all preceding paragraphs as though fully stated herein.

199.    This count is alleged in the alternative.

200.    Plaintiffs bring this claim individually and on behalf of the other members of the Class similarly situated.

201.    By its unlawful, unfair, deceptive, and wrongful acts and omissions, Defendant was unjustly enriched at the expense of Plaintiffs and members of the Class, who paid substantial sums of money for recreational vehicles, which contained defective gas absorption refrigerators at the time of sale.

202.    Plaintiffs and the Class members directly benefited Defendant through the payment for the RV's or boats containing the defective refrigerators as the RV or boat dealer was a mere conduit through which Plaintiffs and the Class members directly benefited Defendant.

203.    Defendant was aware and had knowledge of the benefit it was receiving as a result of its unlawful, unfair, deceptive, and wrongful acts and omissions, as hereinabove described, and has enjoyed the benefits of its financial gains to the detriment and at the expense of Plaintiffs and members of the Class.

204.    Defendant's retention of some or all of the monies they have gained through its wrongful acts and practices would be unjust considering the circumstances of its obtaining those monies.

205.    Plaintiffs and members of the Class have no adequate remedy at law.

206.    Plaintiffs and members of the Class are entitled to seek restitution and other relief from Defendant, including an order requiring Defendant to disgorge all profits, benefits, and other compensation obtained by Defendant through and for its wrongful conduct.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and all similarly situated individuals, demand judgment against Defendant as follows

A.      Awarding appropriate damages for breach of implied warranties;

B.      Awarding damages under the Magnuson-Moss Warranty Act;

C.      Enjoining Defendant from the continued sale of the Defective Gas Absorption Refrigerators;

D.      Awarding Plaintiffs and the Class damages, except on the CLRA claim;

E.      Awarding Plaintiffs and the Class appropriate injunctive relief and declaratory relief;

F.      Finding that Defendant has been unjustly enriched and requiring it to refund all unjust benefits to Plaintiffs and the Class members, together with pre-judgment interest;

G.      Awarding Plaintiffs and the Class all costs and disbursements and reasonable attorneys' fees; and

H.       For an injunction ordering Defendant to actually repair or replace the Defective Gas Absorption Refrigerators.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Submitted this 24th day of June, 2016.

By: _Adam M. Moskowitz_

| | |
|---|---|
| Adam M. Moskowitz, Esq. | Hart L. Robinovitch, Esq. |
| Florida Bar No. 984280 | hart.robinovitch@zimmreed.com |
| amm@kttlaw.com | Christopher  P. Ridout, Esq. |
| Gail A. McQuilkin, Esq. | Christopher.Ridout@zimmreed.com |
| Florida Bar No. 969338 | Caleb Marker, Esq. |
| gam@kttlaw.com | Caleb.Marker@zimmreed.com |
| Robert J. Neary, Esq. | **ZIMMERMAN REED, LLP** |
| Florida Bar No. 81712 | 14646 N. Kierland Blvd. |
| rn@kttlaw.com | Suite 145 |
| Stephanie Moncada Gomez | Telephone: (480) 348-6400 |
| Florida Bar No. 112095 | Facsimile: (480) 648-6415 |
| sgomez@kttlaw.com | *Counsel for Plaintiffs* |
| **KOZYAK TROPIN &** | *(pro hac vice to be filed)* |
| **THROCKMORTON LLP** | |
| 2525 Ponce de Leon Blvd., 9th Floor | Jack Scarola, Esq. |
| Coral Gables, FL 33134 | Florida Bar No. 169440 |
| Telephone: (305) 372-1800 | jsx@searcylaw.com |
| Facsimile: (305) 372-3508 | **SEARCY DENNEY SCAROLA** |
| *Counsel for Plaintiffs* | **BARNHART & SHIPLEY PA** |
| | 2139 Palm Beach Lakes Blvd. |
| | West Palm Beach, FL 33409 |
| | Telephone: (561) 686-6300 |
| | Fax: (561) 383-9451 |