UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:16-cv-22482-RNS

CATHERINE PAPASAN, PAULA MEURER,
TIMOTHY CHERRY, KURT SHOEMAKER, SR,
GWENDOLYN AND LOUIS KING, RICHARD
AND LEAH VOLLBERG, GEORGE ZUCCONI
GARY GRAUS, ANDREW YOUNG,
CHRISTOPHER JOHNSTON, JAMES JACKSON,
JIMMY BYERS, RICHARD LANDSHEFT,
SANDRA GREENE, NELSON AND MARJORIE
GOEHLE, JILL AND SID GARRETT, and all
persons similarly situated,

                      Plaintiffs,

v.

DOMETIC CORPORATION, a Delaware
Corporation,

                      Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT DOMETIC CORP.'S EXPEDITED MOTION TO STRIKE (ECF NO. 352)

### INTRODUCTION

Plaintiffs submit this response in opposition to Defendant Dometic Corp.'s ("Defendant" or "Dometic") motion to strike the rebuttal reports of Plaintiffs' experts Orion Kieffer, Peter Layson ("AEGI Rebuttal Report") and Dr. Garrett Glasgow ("Glasgow Rebuttal Report") as "improper."[1] Plaintiffs respectfully urge the Court to deny the motion.

Plaintiffs properly and timely disclosed the experts' rebuttal reports of both AEGI and Dr. Glasgow in accordance with Fed. R. Civ. P. 26(a)(2)(D)(ii) and the Court's orders, which provide for service of expert rebuttal reports 30 days after service of Defendant's expert reports. *See* ECF Nos. 321, 323. Where an expert opinion is in the form of a rebuttal to a previously disclosed opinion, Rule 26 entitles a party to file a rebuttal expert report within 30 days after the other party's initial disclosure. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, the substance of the expert reports in question are in the form of rebuttals since they are "intended solely to contradict or rebut evidence

---

[1] The AEGI Rebuttal Report and Glasgow Rebuttal Report are in the record as ECF No. 348, Exs. 45, 58. The initial AEGI Report and Glasgow Report are in the record as ECF No. 346, Exs. 5-6.

on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," and were timely disclosed. *Id*. Further, where rebuttal reports do not contain new or contradictory opinions, but instead offer elaboration of the expert's initial opinions in their expert reports and rebut opinions in reports of defendant's experts, the striking of the rebuttal reports is not warranted.

Nothing in the Court's scheduling order eliminates this rebuttal right or precludes such a disclosure, which after all operates for the benefit of the opposing party — here, Defendant — so that they are fully informed of the disclosing party's response to their own expert disclosures. A plaintiff certainly has the right to rebut what defense witnesses say. Since a plaintiff has the right to respond, it is actually to the benefit of the Defendant and the Court that the rebuttal reports be filed. Defendant's motion seeking to exclude the AEGI and Glasgow rebuttal disclosures, therefore, is without merit and should be denied.

## BACKGROUND

Plaintiffs made their initial expert disclosures on January 4, 2019, by serving the initial expert witness reports of Orion Keifer M.E. and Peter Layson of AEGI ("AEGI Report"), as well as Dr. Garrett Glasgow ("Glasgow Report"). (*See* ECF No. 346 at Exs. 5 and 6). The AEGI Report, *inter alia,* described the common design defect in the subject Dometic gas absorption refrigerators and how the defect manifests in the units' boiler tubes upon first use. Dr. Glasgow's report, *inter alia*, explained the conjoint analysis that he conducted to determine that each Plaintiff and class member was overcharged at the point of sale due to Dometic's common omissions of material facts regarding the defect and continuing risks. (ECF No. 346 at Ex. 6). "[C]onjoint analysis is widely-accepted as a reliable economic tool for isolating price premia."[2] Dr. Glasgow opined, based on his survey and analysis, that consumers' willingness to pay for Dometic refrigerators would have been less had the material facts that were concealed actually been disclosed, and therefore, class members were overcharged. Glasgow Report at ¶¶ 6-7, 97-103. (ECF No. 346 at Ex. 5).

On February 4, 2019 Defendant served the reports of several of its testifying experts, including Richard Baron, Amy Gray, David Duffus, Dominique Hanssens, Sonya Kwon, Doug Lown, Kim May, Gary Coggins, and Walter Oliveaux. On February 14, 2019 Defendant served the report of an additional expert witness, Diane Cantor, Ph.D. Dr. Cantor was provided additional

---

[2] *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1110 (N.D. Cal. 2018). *See also Sanchez-Knutson v. Ford Motor Co.*, 181 F. Supp. 3d 998, 996 (S.D. Fla. 2016).

time to submit her report by agreement of the parties because Defendant indicated that Dr. Glasgow did not produce copies of all materials considered with his report on February 4, 2019. As a compromise, the parties stipulated to the brief extension of time for Defendant to serve expert reports related to Dr. Glasgow's opinions.[3] (ECF Nos. 325-326).

Plaintiffs, therefore, had 30 days from the date Dr. Cantor's report was served to submit a rebuttal report addressing her opinions. (ECF No. 323). In subsequent discussions between counsel, it was made clear that Dr. Glasgow would be submitting a rebuttal report to address several of Defendant's experts' reports, including Dr. Cantor. Because of the now staggered response time running 30 days from the respective dates of service, Plaintiffs' counsel entered into a stipulation with Defendant that Plaintiffs would produce all rebuttal reports on March 13, 2019, as opposed to engaging in piecemeal productions, in some instances, by the same expert witness. (*See* ECF No. 353-1 at Exs. A-C). Plaintiffs also sought to avoid having the rebuttal report deadline fall after the deadline for filing the class certification motion since they would have to be filed in support of that motion by the earlier date. The March 13 deadline for Plaintiffs' expert's rebuttal reports was agreed to by the parties, followed by a March 14 motion for class certification deadline.[4] *Id. See also* Joint Motion for Scheduling Modifications, at *1 (ECF No. 339) ("However, due to certain scheduling conflicts and to ensure that the [class certification motion] filing deadline falls after Plaintiffs' deadline to serve rebuttal expert reports, Plaintiffs hereby request a modest three day extension of the deadline such that the motion will be due on March 14, 2019. Dometic does not oppose this request.").

---

[3] Other of Defendant's experts, such as Sonya Kwon, also produced their underlying papers after the date their reports were served. Kwon produced data on February 25, 2019, three weeks after her report. As such, Defendant cannot claim prejudice.

[4] While the Court's March 4, 2019 Order (ECF No. 341) did not address the parties' stipulation regarding the March 13 expert rebuttal deadline, Defendant's counsel agreed not to oppose the service of Plaintiffs' expert rebuttal reports on that date. *See* Rutner email to Robinovitch, March 4, 2019 ("Dometic does not object to the page extension and I can represent that we will not claim Plaintiffs have waived their right to submit rebuttal reports by submitting them on the 13th—assuming of course that the reports constitute true rebuttal reports and not mere supplements to the experts' original reports.") (*See* **Exhibit A**, attached.) As such, no prejudice exists.

On March 13, Plaintiffs served three expert rebuttal reports: the AEGI Rebuttal Report, the Glasgow Rebuttal Report and the Rebuttal Report of Elizabeth Howlett, Ph.D.[5] (*See* ECF No. 348). The AEGI Rebuttal Report contradicted the facts and opinions set forth in the Amy Gray, Richard Baron and Walter Oliveaux reports served by Defendant. The Glasgow Rebuttal Report contradicted the facts and opinions set forth in the reports of Dr. Cantor, Doug Lown, Sonya Kwon, Dominique Hanssen, and David Duffus served by Defendant.

On March 14, 2019, Plaintiffs filed their motion for class certification, supported by the initial and rebuttal reports of AEGI and Dr. Glasgow, as well as the rebuttal report of another expert, Dr. Elizabeth Howlett. (ECF Nos. 344-348). Defendant now seeks to improperly strike the AEGI and Glasgow rebuttal reports.

## ARGUMENT

### I. Applicable Legal Standard

Fed. R. Civ. P. 26(a)(2)(D)(ii) provides that "[a]bsent a stipulation or a court order" evidence "intended solely to contradict or rebut evidence on the same subjected matter identified by another party," disclosure must be made within 30 days after the other party's disclosure. Accordingly,

> For the disclosure of a rebuttal report to be timely under this provision, three things must be true: (1) no stipulation or court order must provide otherwise; (2) the report must be served within 30 days of the report to which it is responding; and (3) the report must be bona-fide rebuttal, that is, it must be "intended solely to contradict or rebut evidence on the same subject matter identified by" an opposing expert.

*Teledyne Instruments, Inc. v. Carins*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii)).

"The test under Rule 26(a)(2)(D)(ii) is not whether a rebuttal report contains new information, but whether it is 'intended solely to contradict or rebut evidence on the same subject matter' of an opponent's expert report." *Id.* at *17. To that end, in order to be considered a rebuttal report, "[a]ll that is required is for the information *to repel other expert testimony*." *Id.* (*citing Lott v. ITW Food Equip. Grp., LLC*, No. 10CV1686, 2013 WL 3728581, at *21-22 (N.D. Ill. July 15, 2013) and *Crowley v. Chait*, 322 F. Supp. 2d 540, 551 (D.N.J. 2004) (emphasis added)).

---

[5] Dr. Howlett's rebuttal report (ECF 348, Ex. 46), responding to the opinions of Dominique Hanssens and Sonya Kwon is not subject to the instant motion to strike.

4

Rebuttal report are proper if they contain "an elaboration of and [are] consistent with an opinion/issue previously addressed' in the expert report." *Pritchard v. Dow Agro Scis.*, 263 F.R.D. 277, 285-86 (W.D. Pa. 2009) (citing *Emcore Corp. v. Optium Corp.*, No. 6-1202, 2008 WL 3271553, at *4 (W.D. Pa. Aug. 5, 2008) and *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006)). *See also Johnson v. Arkema, Inc.*, No. W-09-CV-107, 2010 WL 11506972, at *16 (W.D. Tex. Dec. 16, 2010) (expert rebuttal report that elaborates on earlier opinions properly allowed); *Fulton Financial Advisors v. NatCity Investments, Inc.*, No. 09-4855, 2016 WL 5461897, at *3 (E.D. Pa. Sept. 28, 2016) ("However, a rebuttal report is permissible 'if it contains merely 'an elaboration of and [is] consistent with an opinion/issue previously addressed' in the expert report."); *Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 WL 5410531, *2 (D.N.J. Sept. 26, 2013) (same).

Expert rebuttal reports are permitted to address criticisms of their initial analysis and clarify how those criticisms are misplaced. "Supplemental declarations from experts that merely respond to specific *Daubert* criticisms or 'harmlessly repeat information provided in the earlier reports' do not violate Rule 26." *In re Fluidmaster Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *16 (N.D. Ill. Mar. 17, 2017) (citing *Allgood v. Gen. Motors Corp.*, No. 102CV1077DFHTAB, 2006 WL 2669337, at *5 (S.D. Ind. Sept. 18, 2006)). Such clarifying declarations from experts are "routine." *Id.*

Moreover, "[t]he rules do not require parties or their expert witnesses to anticipate all foreseeable opposing arguments and meet those arguments in their initial reports. 'Such a rule would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material.'" *Teledyne*, 2013 WL 5781274 at *17 (quoting *Crowley*, 322 F. Supp. 2d at 551) (expert may include material in rebuttal report even though material could have been included in initial report)).

"The district court has broad discretion in deciding what constitutes proper rebuttal evidence." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597. 601 (9th Cir. 1991). Even when expert reports are untimely, "the Court should use its discretion" in determining whether to tallow the report under "the following factors: '(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving

5

party's bad faith or willfulness.'" *In re Cessna 208 Series Aircraft Prods. Liab. Litig.*, No. MDL 1721, 2008 WL 4937651, at *3 (D. Kan. Nov. 17, 2008) (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life*, 170 F.3d 985, 993 (10th Cir. 1999)) (finding no harm where untimely disclosure did not impact trial dates, there was no evidence that plaintiff acted in bad faith, defendant had time to continue deposition of expert, and opinions were substantially similar). While Plaintiffs' service of the AEGI and Glasgow Rebuttal are not untimely, even if they were, none of the above cited factors would apply as there is no prejudice or surprise to Defendant.

### II. The AEGI and Glasgow Rebuttal Reports Are Proper Rebuttal Reports Under Rule 26 and Permitted by the Operative Scheduling Order.

Both the AEGI Rebuttal Report and Glasgow Rebuttal Report are bona fide rebuttal reports to the expert reports produced by Defendant. As shown below, the AEGI Rebuttal Report is "intended solely to contradict and rebut evidence on the same subject matter identified by" Defendant's experts Baron, Gray, and Oliveaux. The Glasgow Rebuttal Report is "intended solely to contradict and rebut evidence on the same subject matter identified by" Defendant's experts Cantor, Lown, Hanssens, Kwon, and Duffus. Both reports elaborate on and are consistent with opinions previously addressed in their initial reports. Both reports repel the opposing party's critique of their analysis and explain how it is misplaced. As such, each remains proper and Defendant's motion to strike is without merit and should be denied.

#### A. The Glasgow Rebuttal Report is "intended solely to contradict and rebut evidence on the same subject matter identified by" Defendant's experts Cantor, Kwon, Hanssens, Lown, and Duffus.

Defendant claims that Dr. Glasgow's Rebuttal Report is an improper sur-rebuttal. Defendant is simply wrong. Dr. Glasgow's rebuttal report is entirely proper as it contradicts and rebuts evidence on the same subject matter identified by Defendant's experts Cantor, Kwon, Hanssens, Lown, and Duffus.[6] Defendant primarily takes issue with Dr. Glasgow's rebuttal to Dr. Cantor's critique of his conjoint analysis. Defendant contends that Dr. Glasgow was not entitled to rebut Cantor's opinions and citations challenging his conjoint analysis because she "did not

---

[6] *See* Glasgow Rebuttal Report at ¶¶ 3-6, 21-87 (rebutting opinions and facts offered by Cantor in her report); ¶¶ 4, 73-74, 88 (rebutting opinions and facts offered by Kwon in her February 14 report); ¶¶ 3-6, 44, 71, 75, 88 (rebutting opinions and facts offered by Hanssens in his February 4 report); ¶¶ 4-10, 17, 76, 88 (rebutting opinions and facts offered by Lown in his February 4 report); ¶¶ 2-10, 11-20 (rebutting opinions and facts offered by Duffus in his February 4 report).

6

introduce any new facts or evidence into the case." (Mot. at p. 9). (ECF No. 352). Defendant misinterprets the applicable standard for rebuttal reports, advocating far too narrow a standard that is at odds with the authority cited above.

"The test under Rule 26(a)(2)(D)(ii) is *not* whether a rebuttal report contains new information, but whether it is 'intended solely to contradict or rebut evidence on the same subject matter' of an opponent's expert report." *Teledyne Instruments*, at *17. To that end, in order to be considered a rebuttal report, "[a]ll that is required is for the information to repel other expert testimony." *Id.* Rebuttal reports that contain an elaboration of an opinion or issue previously addressed are entirely proper. *Prichard*, 263 F.R.D. at 284-85. That is precisely what Dr. Glasgow's rebuttal report does - it repels other expert testimony on the same subject matter offered by the other party's experts, namely Cantor, Kwon, Hanssens, Duffus, and Lown and elaborates on his prior opinions and conclusions on those topics, placing Defendant's witnesses' challenges in proper context. Review of Cantor's report shows that throughout the document she both introduces facts, and relies and cites facts set forth in other witness's reports. Dr. Glasgow's response, therefore, was entirely appropriate, consistent with the above-cited authority.

Defendant next argues that Dr. Glasgow's expert rebuttal opinion should be struck because he allegedly should have anticipated Dr. Cantor's opinions and included those rebuttal opinions in his initial report. (Mot. at p. 10). But an expert need not anticipate all potential challenges and criticisms of his/her analysis and confront those in an initial report or forever be barred from responding to such challenges. *Teledyne*, 2013 WL 5781274, at *17; *Crowley,* 322 F.Supp.2d at 551; *U.S. v. Bennedict*, 822 F. 2d 1426, 1428 (6th Cir. 1987) ("…[W]ith respect to 'real rebuttal evidence,' the plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief.").

Finally, Defendant erroneously claims that Cantor's report is not subject to rebuttal because it "did not introduce any new facts or evidence into the case." This contention is baseless. Of course, Cantor attempts to introduce new facts and evidence into the case— that is one of the primary objectives of her 36-page report. A simple review of Dr. Cantor's report, including the detailed footnotes, shows that she introduces and relies on numerous new facts, including the facts introduced in the reports of Kwon, Hanssens, Duffus, and Lown, to challenge Dr. Glasgow's

opinions.[7] In turn, the Glasgow Rebuttal Report properly repels those facts, contentions, and critiques, and places them in proper context, ultimately concluding that they are misplaced and do not alter the results of his conjoint analysis or his conclusions that class members overpaid due to Defendant's omissions of material fact regarding the defect. Glasgow Rebuttal Report at ¶¶ 4, 88 ("4. …Specifically, this report responds to the opinions of Dr. Cantor, Mr. Duffus, Dr. Hanssens, Ms. Kwon, and Mr. Lown. None of their opinions gives me cause to modify my calculations or alter any of my conclusions."). Whether Cantor's opinions are persuasive or will survive a *Daubert* challenge is a question left for another day, but certainly she presents new facts and evidence in her report that are fair game for rebuttal under Rule 26(a)(2)(D)(ii). Ultimately, the jury will decide which expert's opinions are more credible and entitled to greater weight.

As just one example, in an attempt to undercut Dr. Glasgow's analysis, in Paragraphs 22 and 64 of her report, Dr. Cantor introduces and relies on new facts claiming that: "Analysis of all warranty claims received for Dometic cooling units indicates that the risk investigated by Dr. Glasgow appears to be a small probability event" where the "rate of safety-related fire claims is very small", citing Kwon's Report. *See* Cantor Report ¶¶ 22, 38, 64-65. However, as Dr. Glasgow explains in his rebuttal report, Carter's conclusion that the rate of safety related-fire claims is "very small" or "low-probability," citing Kwon's report as its sole support, is entirely without foundation "[a]s Dometic does not typically receive warranty claims for refrigerators on which the warranty period has expired, Ms. Kwon's calculations have likely undercounted the true number of fires and boiler tube leaks (the precursor to a fire) in Dometic gas absorption refrigerators." Glasgow Rebuttal Report at ¶ 72.[8] In turn, Dr. Glasgow properly explains in his rebuttal report that the "facts" introduced to support Cantor's critique of his analysis are misplaced, unsupported, and do

---

[7] *See also* Cantor Report at Attachment 3 (listing "Materials Considered," which include numerous factual documents).

[8] *See* Howlett Report at ¶¶ 74-82 (discussing facts that show that Kwon's analysis as to leak rates is based on an incomplete data set that did not count all leaks); Lown Dep. at 79-80 (RV dealers would be unlikely report cooling unit leak or defect to Dometic after the warranty period expired) (ECF 348, Ex. 46); Quinn Dep. at 292 (testifying that Camping World, the nation's largest RV dealer and service center, did not report cooling unit leaks of class members to Dometic outside of the two-year warranty period)(ECF 348, Ex. 47 at 292).

not affect the conclusions set forth in his report.[9] *See* Glasgow Rebuttal Report at ¶¶ 72-75 (citing Cantor, Kwon, and Hanssens reports).

As another example, in Paragraphs 28-33, and 44-48 of her report, Cantor introduces facts about the "real world supply and pricing considerations of the Dometic Products," citing the Duffus, Hanssens and Lown reports among other facts, and then goes on to provide certain criticisms of Dr. Glasgow's analysis. *See, e.g.*, Cantor Report at ¶¶ 28-33, 44-48 and footnotes 11-15, 23. In turn, in Paragraphs 6-20, 27-36, and 76-79 of his rebuttal report, Dr. Glasgow appropriately responds to the points Cantor, Duffus and Lown make and explains how their conclusions are incorrect and do not affect Glasgow's analysis and conclusions. Dr. Glasgow does not introduce new issues - he elaborates on positions taken in his initial report, which is entirely proper in a rebuttal report. Fourth, at Paragraphs 42-55 of her report, Cantor introduces facts regarding "market competition and shares," "price markups," and "marginal cost of production," citing to facts set forth in the Lown and Duffus reports and the Quinn deposition, among other things. In turn, Dr. Glasgow's rebuttal of Dr. Cantor's and other's presentations of these facts, and

---

[9] Dometic's proposed expert data-analysis witness, Sonya Kwon, confirmed at her deposition that her report is not relevant to understanding the cooling units' actual leak rate because she did not have data to measure that. Kwon Dep. at 32:8-35:16; 36:9-43:22; 81:5-83:25. (*See* **Exhibit C**, attached.) While her 2019 report shows a fifty-percent increase in cooling unit warranty claims, which she agrees is a "big increase," it simply relates to analyzing warranty claims submission and a scattershot insurance claims database and therefore is grossly underinclusive. As pointed out in Dr. Glasgow's Rebuttal Report, Kwon's analysis fails to consider leak incidents that were *not reported* to Dometic to include in its warranty database, which operators of RV dealer/service centers testified was the norm with units more than two years old and out of warranty. Glasgow Rebuttal Report at ¶¶ 72-75. *See also* footnote 8, *supra*. Dr. Hanssens, Defendant's marketing expert, in turn, relied on the calculations in Ms. Kwon's 2017 report to test the effect of disclosing a hypothetical, understated leak rate to consumers, buried in the footnote of a hypothetical brochure. *See* Hanssens's Report at pp. 23-24 and Exh 10B. ("Less than one percent of refrigerators may experience a crack or other breach due to fatigue and/or corrosion", citing Kwon report) (*See* **Exhibit D**, attached.) Therefore, Hanssens incorrectly and misleadingly presented the warranty claim rate that Kwon calculated to survey participants (based on the limited data she had) as the actual leak rate - an entirely separate and different calculation that neither Kwon nor any other witness has ever conducted since Dometic did not collect the data necessary to do so. *Id.* Because Ms. Kwon's report has nothing to do with actual leak or fire rates (data she did not have), any survey or report relying on her analysis, including Cantor's and Hanssens's, to present analysis regarding the frequency or rate of leaks is unreliable and unsupported, as Dr. Glasgow pointed out in his rebuttal report. Since Cantor adopted and endorsed both Kwon's and Hanssens's analysis, and the facts they relied for their conclusions, it was entirely proper for Dr. Glasgow to address those facts and Cantor's critique of Glasgow's report based on them in his rebuttal report.

9

explanation how those facts are misplaced, ultimately irrelevant and do not affect his analysis was entirely proper and within the confines of Rule 26(a)(2)(D)(ii). *See* Glasgow Rebuttal at ¶¶ 6-20, 40-46. Accordingly, Defendant's attempt to strike the Glasgow Rebuttal Report on the basis that Dr. Glasgow should have anticipated the new "facts" and related arguments that Defendant's still undisclosed experts and yet to be deposed third-party witnesses would present, many incorrect or irrelevant, and included those points in his initial expert report is without merit.

An instructive case in this regard is *Crowley, supra.* In *Crowley,* the defendants moved to strike a transcript attached to the plaintiff's expert's rebuttal report. The transcript was submitted in response to the defendant's expert's report criticizing the methodology used by the plaintiff's expert in her original analysis. The defendants argued that by failing to cite to the attached transcript as the basis for the standards used in preparing her original report, the plaintiff's expert should be barred from subsequently introducing the transcript in a rebuttal report. *Id.* at 551. In its denial of the defendant's motion, the court found the defendant's interpretation of what is permissible on rebuttal to be overly narrow, explaining that rebuttal evidence need only "repel" the other expert's testimony. *Id.* The court warned that a rule automatically excluding rebuttal reports containing information that could have been included in an expert's original report "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." *Id.* The same holds true here.

Defendant's contrary authority is distinguishable. The rebuttal report in the primary case Defendant relies, *In re Trasylol Prods. Liab. Litig.*, No. 1:09-MD-01928, 2010 WL 4065436, at *2 (S.D. Fla. Aug. 6, 2010), was deemed deficient because it did not identify *any* testimony from Defendant's experts or new information from Defendant's experts that it was responding to or attacking. *Id.* at *2 ("Review of Terry's expert report reveals the following: 1) It does not specifically identify or attack the testimony of Bayer's experts and 2) It does not address any new or additional material introduced by Bayer's experts."). In contrast here, Dr. Glasgow's rebuttal report specifically addresses the testimony of Defendant's experts, as well as the new factual material introduced by Defendant's experts. The Court in *Trasylol*, nevertheless concluded that rebuttal testimony is permitted when it "directly addresses an assertion raised by an opponent's experts." *Id.* at *2 (citing *Bennedict*, 822 F.2d at 1430).

Similarly, in *Wreal, LLC v. Amazon.com, Inc.*, No. 14-21385-CIV, 2016 WL 8793317, at *3 (S.D. Fla. Jan. 7, 2016), the ultimately excluded report raised an entirely new legal theory, unjust enrichment. Plaintiffs had not mentioned this theory of recovery in their opening expert report, and as a result, it categorically could not rebut anything in Defendant's reciprocal report (which obviously made no mention of an unjust enrichment theory of recovery for plaintiffs). *See also*, *PODS Enters., Inc. v. U-Haul Int'l, Inc.*, No. 8:12-cv-01479, 2014 WL 12628662, at *2 (M.D. Fla. July 2, 2014) (excluding "comments" where expert "does not address another expert's opinion").

### B. The AEGI Rebuttal Report is "intended solely to contradict and rebut evidence on the same subject matter identified by" Defendant's experts Baron, Gray, and Oliveaux.

As shown below, Defendant's challenges to the AEGI Rebuttal Report are also misplaced as the AEGI's rebuttal is "intended solely to contradict and rebut evidence on the same subject matter identified by" Defendant's experts Baron, Gray, and Oliveaux.

#### 1. AEGI's opinion regarding King origin and cause

Defendant first challenges AEGI's Rebuttal Report for addressing the King fire and the Oliveaux Report produced by Defendant on February 4, 2019 as improper rebuttal. What Defendant fails to mention, however, is that the initial AEGI Report specifically addressed the King Fire opining that the results of the materials exam were "…consistent with the Dometic refrigerator being the origin and cause of the King fire…" AEGI Report, at Attachment A-3, p.2. (*See,* **Exhibit B**, attached). *See also*, AEGI Report at pp. 7, 10 ("After reviewing the files for the Meurer, King, Young, Johnston, Landsheft, Goehle, and Garrett fires, we find commonality, demonstrating that Dometic's design defect is the common root cause of the fire for each of these plaintiffs…") (ECF 346 at Ex. 5).

This opinion was subsequently contested by Walter Oliveaux – one of Dometic's origin and cause experts – in his February 4, 2019 Rule 26 report. *See* Oliveaux Report (*see* **Exhibit E**, attached**)** at pp. 27-33. According to Mr. Oliveaux, the King fire was not the result of a leak in the Dometic refrigerator cooling unit, but instead was caused by an "electrical failure on a 120 VAC branch circuit" that caused a fire "in the roof of the traveler above and slightly inboard of the refrigerator." (Oliveaux Report at p. 32). In support of this opinion, Mr. Oliveaux pointed to various observations he made at the joint fire scene inspection with Mr. Layson of AEGI, including

11

his observations and characterization of the RV electrical system and burn patterns on the RV itself. *Id.* at pp. 8-32. Mr. Oliveaux specifically opined that the "delay in involvement of the fire, fire progression in the roof structure of the trailer, and the limited fire exposure to the awning all exclude a finding that the fire originated in the boiler region of the cooling unit…" *Id.* at pp. 30-31.

The origin and cause opinion stated in the March 13, 2019 AEGI Rebuttal Report was not, therefore, introducing for the first time AEGI's opinion on causation. Rather, it addressed AEGI's direct rebuttal to the opinions first expressed by Mr. Oliveaux in his February 4, 2019 report, in which he denies that the fire originated with the Dometic refrigerator, and instead opines that the electrical system of the RV was the origin and cause.[10] AEGI's origin and cause opinions regarding the King Fire were therefore proper rebuttal because they dealt directly with Mr. Oliveaux's fire scene opinions, which were not disclosed until *after* AEGI's original and supplemental reports were prepared.

### 2. AEGI's opinion regarding high ruptures in Dometic cooling units

Next, Dometic objects to AEGI's discussion of high ruptures in Dometic cooling units in the AEGI Rebuttal Report. This challenge appears to be limited to the claim that AEGI should have foreseen "that Dometic's experts would opine otherwise," and that it was therefore

---

[10] *See, e.g.*, AEGI Rebuttal Report, at p. 32 ("A fire starting in the area of the identified electrical activity was inconsistent with the fire spread and development observed. A well-defined point of fire damage and thermal stress at the boiler area of the Dometic refrigerator was identified and consistent with the point of the incipient fire and progressing up and out into the refrigerator chase and into the ceiling area of the RV. The electrical activity utilized for the arc mapping survey was consistent with a fire developing from below in the chase area and developing up and out, following the natural ventilation of the chase. This is consistent with the fundamentals of fire dynamics and that of a naturally ventilated fire. Based on the fire progression and experience from numerous absorption refrigerator examinations, the thin wall overload rupture of the condenser coil was consistent with thermal attack and increasing internal pressure from the developing fire originating from a leak in the boiler area. *Contrary to the opinions of Dometic's fire investigator, Walter Oliveaux*, the high rupture in the condenser is not inconsistent with a boiler tube fire, and does not exclude the refrigerator as the most probable origin and cause of the fire, for the reasons stated above in the analysis of Section X.C of Dr. Gray report. The area of fire origin is consistent with originating with in the area of the Dometic boiler. Conclusions: 4. The area of fire origin in the King RV is consistent with the boiler region of the Dometic absorption refrigerator; 5. Based on the isolated area of fire origin, the most probably source of ignition for the King RV fire is the failure of the Dometic absorption refrigerator boiler; 6. All other sources of ignition within the area of fire origin were ruled out.") (emphasis added).

inexcusable "for AEGI not to have disclosed this opinion sooner." (Mot. at p. 5). No authority is cited for the proposition that a party must "foresee" what an opponent's expert might say before they say it, for obvious reasons. In fact, as cited above, cases hold the opposite. *See Teledyne*, 2013 WL 5781274 at *17; *Crowley* 322 F.Supp. at 551. Clairvoyance is not the standard governing expert discovery. Rather, a party is entitled to find out what an opposing expert is actually going to say, and then to respond through a timely rebuttal. *Id.* That is exactly what AEGI did in this instance.

The issue of high ruptures in Dometic cooling units was first introduced through the experts report of Dometic's origin and cause investigator, Mr. Oliveaux. According to Mr. Oliveaux, the fact that a Dometic cooling unit suffered a high rupture in the cooling unit tubing precluded the possibility of a boiler tube leak and fire, thus conclusively excluding a Dometic refrigerator with a high rupture from being the origin and cause of a fire.[11] AEGI's contrary opinions regarding the relationship between a high rupture in a Dometic cooling unit and a boiler tube leak and fire were in direct rebuttal to the opinions first expressed by Mr. Oliveaux in his expert report. As such, it is proper rebuttal under Rule 26(a)(2)(D)(ii), and Dometic's motion to strike it should therefore be denied.

### 3. AEGI's opinion regarding weld-process improvements

Dometic's objections to AEGI's rebuttal opinions regarding changes to the weld processes used to connect the components of the boiler tube assembly are similarly taken out of context. Dometic ignores the fact that the entire issue of changes in the weld design – and the effect of those changes on boiler tube failure – was first raised by Dometic's own metallurgical expert, Richard Baron, in his February 4, 2019 report.[12] Obviously, until Dometic served Dr. Baron's report, it was not possible for AEGI to address the specific opinions he expressed regarding the

---

[11] *See, e.g.*, Oliveaux Report at pp. 12-15 ("Over Pressure Conditions & Ignition Sequence"); *id.* at p. 14 ("This type of over pressure rupture cannot occur if a leak in the cooling unit has previously occurred in the boiler area.").

[12] *See, e.g.*, Baron Report, at p. 3 ("Summary of Opinions…1. The…manufacturing methods (e.g., welding process) are appropriate and well-selected for the application. Improvements to the welding process and operating parameters have been implemented on Dometic-branded Cooling Units over time to mitigate the potential for corrosion and cracking."); *id.* at pp. 9-10 (detailed discussion regarding the "Boiler Assembly Welding Process") (*see* **Exhibit F**, attached).

welding process changes.[13] The fact that AEGI addressed those opinions in their rebuttal report was not "sandbagging" Dometic with something that should have been in their initial report. Rather, the AEGI opinions were *responding* to arguments first raised by Dometic's experts – and therefore entirely consistent with the rules governing rebuttal reports pursuant to Rule 26.[14]

Dometic asserts that they have been prejudiced, in part, because the AEGI rebuttal opinion on the weld-process issue supposedly "contradict" their deposition testimony by AEGI on the same subject. But even a cursory review of the deposition excerpts offered by Dometic reveal that no such contradiction exists. Each deposition excerpt cited by Dometic concerns whether an automatic weld is superior to a manual weld – a point generally agreed to by AEGI. AEGI's rebuttal opinion to which Dometic objects deals with the *effect* of the change, *i.e.*, whether it appreciably alters what makes the boiler tube design defective in the first place. AEGI opines that it does not, as evidenced by the fact that the same boiler tube failures are occurring in cooling units incorporating the weld-process changes. This testimony – while unwelcome to Dometic – is not inconsistent with the opinions expressed in AEGI's rebuttal report. Nor does Dometic offer any authority to support the claim that an inconsistency between an expert deposition and an expert rebuttal report requires that the latter be stricken as unduly prejudicial to the opposing party. On

---

[13] In a variation on the "foreseeability" argument, Dometic asserts that AEGI should have included their weld-process opinions in their original report, because the issue was "a centerpiece of Dometic's class certification opposition in *Varner*." (Mot. at p. 6). However, Dometic fails to explain how AEGI was obligated to anticipate this argument before receipt of the Baron Report when neither Dr. Baron – nor AEGI for that matter – were designated experts in the *Varner* action *and* Defendant *withdrew* their prior engineering expert from *Varner*, Michael Stevenson, as a testifying expert in this case. Nor does Dometic cite any authority for their "foreseeability" argument vis-à-vis the separate *Varner* litigation.

[14] Contrary to the sound bite used by Dometic in their motion, the fact that AEGI was responding to the opinions first expressed in the Baron Report is clear from a review of the AEGI Rebuttal Report itself. *See, e.g.*, AEGI Rebuttal Report at pp. 8-9 ("Simply put, there is no other explanation for the excessive corrosion and damage on the inside of the Dometic cooling unit boiler tubes other than the design of the boiler tube assembly itself. Dr. Baron completely ignores the boiler tube design issue, pointing instead to changes made by Dometic in 2005 – 2007 to improve their welding processes as having a beneficial effect on the life of cooling unit boiler tubes. While the weld improvements instituted by Dometic are likely to reduce fatigue failures from the *outside* in, it does little to improve the condition at the interface between the boiler tube wall and weak solution on the *interior* of the boiler adjacent to the weld, where the excessive and damaging corrosion is occurring.") (emphasis in original).

the contrary, the fact that Dometic feels they have discovered an inconsistency in AEGI's opinions to presumably exploit at trial shows a complete lack of prejudice on its part.

### 4. AEGI's opinions regarding the defect theory

Finally, Defendant incorrectly argues that the AEGI Rebuttal Report should be stricken because AEGI allegedly changed its theory of the defect. AEGI's opinions regarding the manifestation of the defective design of the boiler tube assembly on the inside surface of Dometic refrigerator cooling unit boiler tubes have not changed. AEGI opined in their initial report that the design of the boiler tube assembly caused excessive corrosion on the inside of the boiler tube along a line adjacent to the exterior heater pocket weld, and that the process began with first use.[15] AEGI's Rebuttal Report specifically responded to the 24-hour test conducted by Dr. Baron (and first introduced in his February 4 2019 report), and opined that Dr. Baron's test confirmed that the process of accumulation of excessive corrosion begins upon first use.[16] This is not a "new" theory of defect. It is instead proper rebuttal opinion responding directly to a test conducted by Dometic's expert, the results of which AEGI did not have until Dr. Baron's report was produced.

Dometic cites a variety of authority for the proposition that a plaintiff cannot use a rebuttal report to "change horses in midstream when the plaintiffs' first theory does not pan out." (Mot. at p. 8). But AEGI's Rebuttal Report represents the exact opposite phenomenon, *i.e.*, a consistent theory of defect confirmed by the defense expert's own testing and report. While AEGI's rebuttal opinions may be disagreeable to Dometic, they do not represent a change in theory or improper rebuttal under Rule 26.

### C. Dometic's claims of improper sur-rebuttal are misplaced.

As set forth in more detail above, AEGI's Rebuttal Report responds directly to the opinions and conclusions contained in Dometic's experts' reports, which themselves are largely the product of "new evidence" in the form of testing and analysis performed by those same experts. The same holds true as to the Glasgow Rebuttal Report as it responds directly to facts and opinions introduced in Dometic's experts' reports. While Dometic seeks to parse out AEGI's opinions regarding the methodology used by Drs. Baron and Gray in designing and performing their tests –

---

[15] *See, e.g.*, AEGI Report, at pp. 8-9 ("The defect is manifest with the initial use, even though the corrosive process may take time to result in visible damage and/or poor performance."); *see also*, *id.* at pp. 18-23.

[16] *See*, AEGI Rebuttal Report, at pp. 5, 7.

characterizing these opinions as improperly "criticiz[ing] the criticism in an attempt to bolster its initial report" (Mot. at p. 9), the effort is without merit. The assumptions and methodology that formed the basis for Drs. Baron and Gray's new testing – and the reliability of both – is inextricably intertwined with the testing itself. If – as Dometic concedes – it is proper for AEGI to rebut the opinions based on the new testing, it is also proper for AEGI to provide rebuttal opinions regarding the basis for that new testing.

It also appears that Dometic is improperly characterizing both AEGI's and Glasgow's rebuttal report as "sur-rebuttal" based on the assertion that Dometic's expert reports were themselves "rebuttal" reports, and that any response to the latter would therefore be improper "sur-rebuttal." Dometic's argument is inconsistent with this Court's Scheduling Order, which granted *both* sides the right to file rebuttal reports, and cannot therefore be a legitimate basis for striking any part of AEGI's or Glasgow's rebuttal reports.

The cases Defendant cites to support its arguments are distinguishable. *Coward v. Forestar Realty, Inc.*, 282 F. Supp. 3d 1317, 1330-31 (N.D. Ga. 2017), addressed an entirely different type of situation not presented here— where the party's expert attempted to provide a "supplemental report" under Rule 26(e), not Rule 26(a)(2)(D)(ii).[17] Further, the report in question was untimely and did not address facts and evidence in the opposing party's expert's reports, but new testing. *Id.* Similarly, *Sibley v. Sprint Nextel Corp.*, No. 08-2063-KHV, 2013 WL 1819773 *1, (D. Kan. Apr. 30, 2013) addressed supplemental reports and "second supplemental expert reports" filed by both parties under Rule 26(e) after rebuttal reports had been served, not rebuttal reports under Rule 26(a)(2)(D)(ii). *Dejena v. Marine Tech.*, No. 4:11-cv-1690, 2013 WL 6768407, at *8-9 (D. Colo. Dec. 30, 2013) also involved an entirely different situation from the case at bar where *after* the Plaintiff submitted rebuttal reports to the Defendant's expert reports, Defendant attempted to file two additional "sur-rebuttal" reports, essentially a fourth round of expert reports not contemplated by the court's scheduling order or Rule 26(a)(2)(D(ii), without leave of court.[18] While the sur-

---

[17] *See also*, *id.* at 1328 ("Under Federal Rule of Civil Procedure 26(e), '[a] party also must supplement or correct its disclosure 'in a timely manner if the party learns that in some material respect the disclosure ... is incomplete or incorrect.'") (quoting Fed. R. Civ. P. 26(e)) (alteration in original).

[18] *See Dejena*, 2013 WL 6768407 at *8 ("Plaintiffs retained Scott Graham as a rebuttal expert. In addition, one of Plaintiff's original experts, Eric Greene, filed a rebuttal report. Defendants' experts Savander and Caiazzo then submitted revised reports, which Plaintiffs move to strike as improper sur-rebuttal.").

16

reply report were stricken, the plaintiff's rebuttal reports responding to the Defendant's experts' reports were allowed. As an additional ground, the court found that the challenged sur-rebuttal reports did not respond to facts cited in plaintiff's expert's rebuttal reports. *Id.* As shown above, situation provided by the AEGI and Glasgow Rebuttal Reports is completely different from the situations in *Coward*, *Sibley*, and *Djena*, as both are timely and *do* address and repel facts and evidence set forth in the opposing party's expert's reports.

Finally, it cannot be forgotten that the Court's scheduling order expressly permitted both parties the right to submit opening expert reports, followed by rebuttal expert reports under Rule 26(a)(2)(D)(ii). Defendant cannot engage in gamesmanship attempting to strategically extinguish Plaintiffs' right to submit rebuttal reports by labeling their expert's initial reports instead as rebuttal reports and claiming that Plaintiffs' are now "sur-rebuttals." Rule 26(a)(2)(D)(ii) is not so narrow.

**III.    Defendant Is Not Prejudiced or Harmed by Plaintiffs' Disclosures.**

"Rule 37(c) permits a district court to refuse to strike expert reports and allow expert testimony even when the expert report violates Rule 26(a) if the violation is justified or harmless." *Sibley*, 2013 WL 1819773 at *7 (citations omitted). In the event this Court determines any or all parts of the subject rebuttal reports are supplemental initial reports or sur-rebuttals and untimely under Rule 26, Plaintiffs urge this Court to conclude such reports have been substantially justified and harmless. *Waste Servs., Inc. v. Waste Mgmt. Inc.*, No. 6:05-cv-320-Orl-22DAB, 2006 WL 51909230, at *1, n.2 (M.D. Fla. Dec. 1, 2006) (declining to strike opinions that went beyond merely rebutting expert damage computations noting that such a severe sanction that was not warranted); *In re Cessna 208 Series Aircraft*, 2008 WL 4937651, at *3 (finding untimely disclosure was harmless); *Sibley*, 2013 WL 1819773 at *8 (finding disclosure of second supplemental expert report was harmless when opposing party did not request supplemental discovery, allowing report).

Here Defendant identifies no actual prejudice. While it generally claims that it lacks time to "re-depose" Glasgow, Kieffer, and Layson, they have already been thoroughly deposed each for a full day and not denied the ability to inquire into any of these topics. Moreover, depositions in this case are still ongoing. To the extent additional deposition time or a sur-rebuttal was desired to

further explore opinions set forth in the Glasgow and AEGI Rebuttal Reports, no request was ever made, a fact that Defendant omits from its motion.[19]

## CONCLUSION

Plaintiffs respectfully urge the Court to deny Defendant Dometic Corp.'s Expedited Motion to Strike (ECF No. 352) as Plaintiffs' submission of the AEGI and Glasgow Rebuttal Reports was entirely proper.

---

[19] The day before the instant motion was filed, Defendant's counsel sent a short "meet and confer" email to Plaintiffs' counsel asking only if Plaintiffs would consent to the motion to strike and withdraw their rebuttal reports. *See*, Pls. Opp'n Expedited Briefing (ECF No. 353) (Mar. 22, 2019) at Ex. D. Notably, however, the email failed to mention any claimed prejudice or seek the opportunity re-depose Plaintiffs' experts. *Id.* Defendant also failed to meet and confer on expedited treatment of this motion and never even mentioned it intended to seek shortened briefing schedule. *Id. See also*, Pls. Opp'n Expedited Briefing (ECF No. 353) (Mar. 22, 2019) at pp. 2-3.

DATED: April 2, 2019                                      Respectfully submitted,

                                                          */s/ Adam M. Moskowitz*

**ZIMMERMAN REED LLP**                                    **THE MOSKOWITZ LAW FIRM, PLLC**
Hart L. Robinovitch (admitted *pro hac vice*)             Adam M. Moskowitz
hart.robinovitch@zimmreed.com                             Florida Bar No. 984280
14646 N. Kierland Blvd., Suite 145                        Howard M. Bushman
Scottsdale, AZ 85254                                      Florida Bar No. 0364230
(480) 348-6400 Telephone                                  Joseph M. Kaye
(480) 348-6415 Facsimile                                  Florida Bar No. 117520
                                                          2 Alhambra Plaza, Suite 601
Caleb Marker (admitted *pro hac vice*)                    Coral Gables, FL 33134
caleb.marker@zimmreed.com                                 Telephone: (305) 740-1423
2381 Rosecrans Ave., #328                                 Email: howard@moskowitz-law.com
Manhattan Beach, CA 90245                                 Email: adam@moskowitz-law.com
(877) 500-8780 Telephone                                  Email: joseph@moskowitz-law.com
(877) 500-8781 Facsimile                                  Secondary: dione@moskowitz-law.com
                                                          Secondary: alex@moskowitz-law.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**                       **LAW OFFICES OF TERRENCE A. BEARD**
Thomas E. Loeser                                          Terrence A. Beard
Steve W. Berman                                           3240 Lone Tree Way, Suite 101
Barbara A. Mahoney                                        Antioch, CA 94509
1301 Second Ave., Suite 2000                              Telephone: (925) 778-1060
Seattle, WA 98101                                         TBeard1053@aol.com
Telephone: (206) 623-7292
Facsimile: (206) 623-0594                                 **SEARCY DENNEY SCAROLA BARNHART & SHIPLEY PA**
steve@hbsslaw.com                                         Jack Scarola, Esq.
toml@hbsslaw.com                                          Florida Bar No. 169440
barbaram@hbsslaw.com                                      jsx@searcylaw.com
                                                          2139 Palm Beach Lakes Blvd.
                                                          West Palm Beach, FL 33409
                                                          Telephone: (561) 686-6300
                                                          Fax: (561) 383-9451

                                                          *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz