United States District Court
for the
Southern District of Florida

| Catherine Papasan and others, | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-22482-Civ-Scola |
| | ) | |
| Dometic Corporation, Defendant. | ) | |

### Order Denying the Plaintiff's Motion for Class Certification and Dismissing the Consolidated Class Action Complaint

Catherine Papasan and 17 other individuals bring this class action suit against Dometic Corporation ("Dometic") for manufacturing allegedly defective refrigerators. Currently pending before the Court is the Plaintiffs' Motion for Class Certification. (ECF No. 345.) The Defendant has timely responded (ECF No. 373) and the Plaintiffs have replied (ECF No. 386). Having reviewed the parties' briefing and exhibits, and the applicable law, the Court **denies** the motion for the reasons described below.

### I. Background

The operative complaint is the Plaintiffs' Consolidated Class Action Complaint (the "Complaint") (ECF No. 300). According to the Complaint, Dometic manufactures gas absorption refrigerators designed for use in recreational vehicles ("RVs"). (*Id.* ¶ 223.) The Plaintiffs allege that Dometic's refrigerators have a design defect that results in excessive corrosion on the inside of the gas absorption refrigerator's boiler tubes. (*Id.* ¶ 2.) The Plaintiffs allege that the corrosion causes the boiler tubes to internally "corrode, crack, and ultimately expel flammable ammonia, hydrogen gas, and carcinogenic sodium chromate at high pressure." (*Id.* ¶ 1.) The Plaintiffs allege that the leaked gas can ignite, but even if it does not ignite, the corrosion eventually ruins the refrigerator's functionality. (ECF No. 345 at 5.) The Plaintiffs each own an allegedly defective Dometic refrigerator. (*Id.* at 4.)

The Plaintiffs now move for class certification based on the allegations that they each "received an unmerchantable refrigerator and were damaged by overpaying for a defective product." (*Id.* at 1.) In other words, they are not seeking class certification based on a fire, damage to property, or a broken refrigerator, but rather on a theory of economic loss at the point of purchase. (*Id.* at 3.) According to the Plaintiffs, "because the Defendant concealed material facts regarding the defect and continuing safety risk to every class member . . . every class member was induced at the point of sale to purchase their refrigerators at

a premium price that they otherwise would not have paid[.]" (ECF No. 386 at 1.) The Complaint asserts claims for violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, breaches of implied warranty, unjust enrichment, and various state laws.

The Motion seeks certification of nine subclasses, based on the various states in which the Plaintiffs purchased their refrigerators:

> All persons who purchased in [insert one of nine states[1]] Dometic Gas Absorption Refrigerator models RM 2620; RM/DM2652; RM/DM2662; RM/DM2663: RM3762 & DMR/DMC7-Series; RM 2820: DM2852 & DM2862; RM3862 & RM3863; RM3962: NDM1062; RM 1350: 1350WIM; NDA 1402: and 1402IMS built between January 1, 1997 and the present.

(ECF No. 345 at 3.)

## II. Legal Standard

Class actions are "exception[s] to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend,* 133 S. Ct. 1426, 1432 (2013). Parties seeking to certify a class must "affirmatively demonstrate . . . compliance with Rule 21." *Id.* Class certification analysis entails consideration of the factual and legal issues comprising the plaintiff's cause of action. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000).

The Court begins its review of a motion for class certification by determining whether "at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000); *see also Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("[A]ny analysis of class certification must begin with the issue of standing. . . . Only after the court determines the issues for which the named plaintiffs have standing should it address the question of whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.").

If the named plaintiffs possess Article III standing, the Court then determines whether class certification is appropriate under Federal Rule of Civil Procedure 23. "Under Rule 23, certification is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of Rule 23(b)(1), (2), or (3)." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Under Rule 23(a),

---

[1] Arkansas, California, Florida, Delaware, New Jersey, New York, Ohio, Texas, and Washington.

the party seeking certification must demonstrate: "(1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Satisfaction of the Rule 23(a) factors, however, does not end the inquiry, and a class still may not be certified unless one of the requirements of Rule 23(b) are satisfied. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004).

Where certification is sought under Rule 23(b)(3), the plaintiff must show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed. R. Civ. P. 23(b)(3). In making such determinations, courts consider "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability of undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." *Id.*

In reviewing a motion for class certification, the Court must conduct a "rigorous analysis" of the facts and law to determine whether the plaintiff has met its burden of demonstrating compliance with Rule 23. *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1169 (11th Cir. 2010) (citation omitted); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (the "burden of proof to establish the propriety of class certification rests with the advocate of the class."). While the district court's class certification analysis "may 'entail some overlap with the merits of the plaintiff's underlying claim,' Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (citations omitted). Rather, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*

### III. Analysis

#### A. Article III Standing

The Court begins its review of a motion for class certification by determining whether the named class representative has Article III standing. *Bush*, 221 F.3d at 1279-80. This is not the first time that the Court has had cause to address whether the Plaintiffs have standing in this matter. The

Defendant first challenged the Plaintiffs' standing in its Motion to Dismiss Plaintiffs' Amended Class Action Complaint (ECF No. 32). In ruling on the motion to dismiss, the Court observed that the Plaintiffs purported to assert two separate injuries: (1) that their refrigerators had an increased risk of fire; and (2) that they were denied the benefit of their bargain because the alleged defect in the boiler tube assembly was present at the moment of purchase. (Order on Def.'s Mot. to Dismiss at 7, ECF No. 86.) The Court held that the alleged increased risk of fire was insufficient to confer standing on the Plaintiffs, noting that numerous courts have found that allegations of possible future injury, including possible product failure, are insufficient to confer standing. (*Id.* at 6-7.) However, relying primarily on *In re Zurn Pex Plumbing Products Liability Litigation*, 644 F.3d 604 (8th Cir. 2011), the Court held that the Plaintiffs' benefit of the bargain theory was sufficient to confer standing on the Plaintiffs at the motion to dismiss stage because they alleged that "the boiler tubes will be begin to corrode in all of the defective refrigerators from normal use immediately after purchase and will all eventually leak gas, whether or not a fire ever occurs." (ECF No. 86 at 7-8.)

  The Court again considered standing on Defendant's motion for summary judgment. (ECF No. 171.) With respect to the Plaintiffs' benefit of the bargain theory, the Court summarized the case law regarding standing in "no-injury" products liability suits. (ECF No. 219 at 4-6.) The Court identified cases holding that the plaintiffs had standing where they alleged that the product's defect was inherent and present at the point of sale, even if the product had not leaked or exhibited the alleged defect. *See, e.g., In re Zurn,* 644 F.3d at 616. The Court also identified cases holding that, regardless of whether an alleged defect was manifest at the time of purchase, a plaintiff has standing if he sufficiently alleges economic harm. *See, e.g., Melton et al. v. Century Arms, Inc.* No. 16-21008, 2017 WL 1063449, at *2 (S.D. Fla. Mar. 20, 2017) (Moreno, J.) (holding that, despite the defendant's argument that the plaintiffs had not alleged that the defect had manifested itself in each plaintiffs' product, the plaintiffs had standing at the motion to dismiss stage because they alleged economic harm due to the cost of repair, replacement, or modification of the allegedly defective product); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation,* 754 F.Supp.2d 1145, 1164 (C.D. Cal. 2010) (disagreeing that standing cannot be established absent a manifested defect and holding that as long as plaintiffs allege a legally cognizable loss under the "benefit of the bargain" or some other legal theory, they have standing).

  The Court ultimately held that it "need not decide whether the Plaintiffs must establish that there is an inherent defect that is already manifest in each cooling unit or that they have suffered actual economic loss, or both, because the Plaintiffs have established neither." (ECF No. 219 at 5-6.) The Court dismissed the case because the Plaintiffs lacked standing. (*Id.* at 13-14.)

Now, on this third iteration of the Complaint, the Court must determine if the Plaintiffs have standing before analyzing the class certification requirements under Rule 23. To establish Article III standing, the Plaintiff must show that (1) he has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Def.'s of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). An injury in fact is "an invasion of a legally protected interest which is (1) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotations and citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (internal quotations and citations omitted). For an injury to be concrete, the "injury must be 'de facto'; that is, it must actually exist." *Id.* An injury need not be tangible in order to be concrete. *Id.* at 1549.

The Defendant's opposition raises two arguments against standing. First, the Defendant asserts that the Plaintiffs and their experts "do not come close to establishing an inherent defect" in the Dometic refrigerators that exists at the point of sale. (ECF No. 373 at 8.) Moreover, the Plaintiffs cannot establish that all refrigerators will eventually leak within their useful life. Therefore, some of the refrigerators will likely last their full useful life, giving the Plaintiffs the benefit of their bargain. (*Id.* at 9.) The Defendant also argues that the Plaintiffs have not established economic loss. (*Id.* at 10.) According to the Defendant, based on the expert reports and testimony, the Plaintiffs have not established damages based on a loss of usefulness, a loss in value, or overpayment. (*Id.*)

The Plaintiffs assert that they have established standing because "they were overcharged for a defective product that, but for Dometic's concealment, they would not have purchased on the same terms." (ECF No. 386 at 3.) Based on this theory, the Plaintiffs argue that they did not "receive the benefit of the bargain" when they purchased the Dometic refrigerators. (*Id.*) The Plaintiffs rely on their experts' "conjoint analysis" demonstrating that had the Plaintiffs been exposed to a warning sticker, it would have affected their willingness to pay for the refrigerator. (ECF No. 345 at 11-12.)

"On a motion for class certification, Plaintiffs must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the Main Class." *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 WL 580696, at *3 (N.D. Cal. Feb. 13, 2014). "Further, standing is claim-and-relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1064–65 (N.D. Cal. 2015). In *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002), the Fifth Circuit considered whether a plaintiff had demonstrated injury-in-fact

based on a benefit of the bargain theory in the context of a prescription drug. The Plaintiff in *Rivera* sought to represent a nationwide class who had taken Duract, a medication that could cause liver failure if taken on a long-term basis. *Id.* at 317. Rivera and the class she sought to represent had taken Duract but had not suffered any physical or emotional harm. *Id.* Rivera claimed that she was denied the benefit of the bargain when she unknowingly purchased a medication that could cause liver failure. The court rejected Rivera's theory of injury-in-fact based on economic damages. *Id.* at 319. The court explained that benefit of the bargain damages are *contract* damages, not products liability damages. *Id.* at 320. Rivera did not have a contract with the defendant pharmaceutical company nor was she able to show that she did *not* get what she bargained for, an effective pain killer. *Id.*

> The confusion arises from the plaintiffs' attempt to recast their product liability claim in the language of contract law. The wrongs they allege—failure to warn and sale of a defective product—are products liability claims. Yet, the damages they assert—benefit of the bargain, out of pocket expenditures—are contract law damages. The plaintiffs apparently believe that if they keep oscillating between tort and contract law claims, they can obscure the fact that they have asserted no concrete injury.

*Id.* at 320-21.

The Court agrees with the Fifth Circuit's analysis in *Rivera*, but finds this case distinguishable because the Plaintiffs assert an inherent defect that will manifest upon first use of the refrigerator. However, like in *Rivera*, the Plaintiffs are seeking benefit of the bargain damages although there is no contract between the Plaintiffs and the Defendant. *Cf. Cole v. General Motors Corp.*, 484 F.3d 717, 723 (5th Cir. 2007) (holding that the plaintiffs had standing where each plaintiff suffered economic injury "at the moment she purchased a DeVille because each DeVille was defective . . . Notably in this case, plaintiffs may bring claims under a contract theory based on the express and implied warranties they allege.").

As part of their standing analysis, both parties raise issues of whether the refrigerators are actually defective upon first use. To determine standing, the Court would also need to analyze whether benefit of the bargain damages are available under each theory of liability. *In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1064–65 ("Further, standing is claim-and-relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought."). "The Court finds that where the Defendant's challenge to the court's jurisdiction is also a challenge to the merits of Plaintiff's cause of action, the proper course of action for the Court is to find that jurisdiction exists and

deal with the jurisdictional objection as a direct attack on the merits of Plaintiff's case." *Richards v. Del Webb Communities, Inc.*, No. 11-368-PHX-SMM, 2012 WL 12792184, at *6 (D. Ariz. Sept. 5, 2012) (citing *Williamson v. Tucker,* 645 F.2d 404, 415 (5th Cir. 1981)). "Plaintiff's allegations that the [refrigerators] are defective goes to the merits of whether he can establish a breach of the implied warranty . . . and that allegation is intertwined with the issues of whether the [refrigerator] has caused an injury in fact as a basis for subject matter jurisdiction." *Id.* Given the overlap between a standing and merits analysis in this case, the Court holds that the Plaintiffs have established standing.

### B. Class Certification under Rule 23

Dometic challenges certification under the ascertainability, commonality, and typicality elements. As detailed below, the Court finds the proposed classes are not ascertainable, denies certification on that basis, and does not reach the parties' other arguments.

The Plaintiffs argue that the class "can be readily identified through Dometic's sales and warranty registration records, DMV records and if necessary, through affidavits." (ECF No 345 at 12.) The Plaintiffs assert that Dometic's "Prior NHTSA recall campaigns also demonstrate that identifying Class members is administratively feasible." (*Id.*) In response, the Defendant argues that the Plaintiffs fail to proffer evidence to establish that Dometic's records would be useful for identification purposes. (ECF No. 373 at 12.) According to Dometic, because it sells the refrigerators to RV manufacturers and dealers, it does not have records of the sales made by those intermediaries to customers. (*Id.* at 13.) The Defendant asserts that DMV records and Dometic's recall records would also be unhelpful in identifying class members because they are incomplete. Upon careful review, the Court agrees with Dometic.

"Rule 23 implicitly requires that the 'proposed class is adequately defined and clearly ascertainable.'" *Karhu*, 621 F. App'x at 946 (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (noting that ascertainability is a "threshold issue"). "In order to establish ascertainability, the plaintiff must propose an administratively feasible method by which class members can be identified." *Karhu*, 621 F. App'x at 947. A class identification method is "administratively feasible" where it is "a 'manageable process that does not require much, if any, individual inquiry.'" *Id.* at 946 (quoting *Bussey*, 562 F. App'x at 787). Moreover, where a plaintiff proposes to identify class members through a defendant's records, he must "*establish* that the records are in fact useful for identification purposes, and that identification will be administratively feasible." *Wasser v. All Market, Inc.,* 329 F.R.D. 4464, 472 (S.D. Fla. 2018) (Scola, J.) (quoting *Karhu,* 621 F. App'x at 948). "Thus, where a plaintiff provides no

more than unsupported asserti[ons] that class members can be identified using the defendant's records, it does not satisfy the ascertainability requirement." *Id.* (citations and quotations omitted).

Here, the Plaintiffs have failed to proffer any evidence that Dometic's records, including Dometic's recall efforts, would be useful to identify class members. The Plaintiffs refer to Dometic's "sales and warranty registration records," with no citation to the record. (ECF No. 345 at 12.) The Plaintiffs "did not proffer any such records or data[ ] [n]or did the Plaintiffs produce evidence that these records exist for the time period at issue or that they would be useful for identification purposes." *Wasser*, 329 F.R.D. at 473. The Plaintiffs have also failed to explain how relying on DMV records would help identify class members. At most, the DMV records would identify the owners of RVs, but not which RVs included an allegedly defective Dometic refrigerator model. (ECF No. 373 at 13 (citing deposition testimony indicating that the RV companies did not keep a record of which refrigerators were installed in which RV models).)

With regard to Dometic's prior recalls of its refrigerators, the Plaintiffs assert that Dometic's prior recalls resulted in obtaining customer sales data and sending comprehensive owner mailings. (ECF No. 386 at 5.) The Plaintiffs' ascertainability argument focuses on "notifying" potential class members. *See id.* (noting that the recall mailings "enable[d] Dometic to assure notification of all affected owners"). The Plaintiffs' argument is misplaced: notification is not *identification.* Based on the Defendant's evidence, the RV companies did not keep records of which customers actually had Dometic refrigerators installed in their RV. (ECF No. 373 at 13.) Therefore, during the recalls, there was "no way to know whether the consumers who received notices actually owned Dometic refrigerators." (*Id.*) "Plaintiffs' proposal goes to notice, not ascertainability . . . the fact that Plaintiffs may be able to notify a large group of putative class members does not, alone, establish ascertainability." *Melton v. Century Arms, Inc.*, No. 16-cv-21008, 2018 WL 6980715, at *7 (S.D. Fla. Nov. 28, 2018) (Louis, Mag. J.). By Dometic's own admission, Dometic sent 3 million recall notices for a recall population of only approximately 1.6 million precisely because of their inability to identify refrigerator owners. (ECF No. 373 at 13.) Therefore, the prior recalls do not provide a feasible method of identifying potential class members.

Even if Plaintiffs could rely on Dometic's prior recalls, they would need to explain to the Court how they are going to use the recall protocol to identify class members. *See Karhu*, 621 F. App'x at 949 (noting that plaintiff "did not explain to the court that it envisioned a three-step identification process"). It is unclear from the Plaintiffs' briefs if they were planning to send notice to the same recall population and then rely on class members to come forward and identify themselves via affidavit or some other method of verification. Merely asserting that "Defendant's prior recalls show that there are feasible ways to determine

class inclusion" (ECF No. 386 at 5) is insufficient to meet the ascertainability requirement.

The last method to identify class members put forth by the Plaintiff is self-identification by affidavit. Where ascertainment via self-identification is proposed, a plaintiff must establish that it is both "administratively feasible and not otherwise problematic." *Karhu,* 621 F. App'x at 948. "A plaintiff might establish that self-identification-based ascertainment is administratively feasible and otherwise unproblematic by proposing a case-specific and demonstrably reliable method for screening each self-identification." *Id.* at 949 n.5. The Plaintiffs have not provided the Court with any proposals demonstrating how self-identification would work, much less a plan that would be administratively feasible and not otherwise problematic.

**4. Conclusion**

The Court **denies** the Plaintiffs' motion for class certification. **(ECF No. 345).** In light of the Plaintiffs' assertion of jurisdiction only under CAFA[2] and this order denying class certification, the Court further **dismisses the case without prejudice** for lack of subject matter jurisdiction. *See Karhu v. Vital Pharms., Inc.*, No. 13-60768, 2014 WL 1274119 (S.D. Fla. Mar. 27, 2014) (Cohn, J.). Finally, although the parties' submissions relating to this motion were filed under seal, this order contains no confidential information, trade secrets or other information that justifies sealing of this order.

The Clerk is directed to **close** this case. All pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on July 24, 2019.

_____
Robert N. Scola, Jr.
United States District Judge

---

[2] The Court has also considered whether the Plaintiff may assert federal question jurisdiction under the Magnuson-Moss Warranty Act (the "MMWA"). The MMWA, however, has a $50,000 amount in controversy jurisdictional requirement. 15 U.S.C. § 2310(d)(3)(b). Because one Plaintiff's individual claim does not meet the jurisdictional requirement, the Court would not have jurisdiction under the MMWA. *See Carter v. Killingsworth,* 477 F. App'x 647, 648 (11th Cir. 2012) (affirming dismissal for lack of subject matter jurisdiction under the MMWA because plaintiff failed to plead the jurisdictional amount).