United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Catherine Papasan and others, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-22482-Civ-Scola |
| | ) | |
| Dometic Corporation, Defendant. | ) | |

## <u>Order</u>

This matter is before the Court upon the Plaintiffs' objections (Obj., ECF No. 555) to Magistrate Judge Alicia M. Otazo-Reyes' order (Order, ECF No. 553) concerning the Defendant Dometic Corporation's *Daubert* motion (ECF No. 380) to exclude the opinions of Applications Engineering Group, Inc. ("AEGI") and Dr. Garret Glasgow. For the reasons below, the Court **overrules** the Plaintiffs' objections (**ECF No. 555**).

### 1. Legal Standard

The Defendant's *Daubert* motion is a non-dispositive matter. As such, the Court's review is limited to evaluating whether Judge Otazo-Reyes' order is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). That is a highly deferential standard. "The mere fact that a reviewing [c]ourt might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Pendlebury et al. v. Starbucks Coffee Co.,* No. 04-80521, 2007 WL 4592267, at *2-3 (S.D. Fla. Dec. 28, 2007) (Marra, J. (citing *Georgia State Conf. of Branches of NAACP v. Georgia*, 775 F.2d 1403, 1416 (11th Cir. 1985)).

A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948); *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1543 (11th Cir. 1985). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *SEC v. Kramer*, 778 F. Supp. 2d 1320, 1326–27 (M.D. Fla. 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.,* 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000)).

## 2. Analysis

Federal Rule of Evidence 702 provides a three-part inquiry for trial courts to consider prior to admitting expert testimony, that is whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011). "*Daubert* instructs courts to consider the following factors: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

### A. Applicable Standard of Proof

The Plaintiffs do not challenge particular findings of fact made by Judge Otazo-Reyes. They instead mark their disagreements with how she applied the law. For starters, they seem to assert that Judge Otazo-Reyes applied the wrong standard of proof given the litigation's posture at the pre-certification stage. "Expert testimony submitted in support of class certification," they say, need "only demonstrate that a common methodology exists to prove a common issue." (Obj. 12.) For that proposition, they cite to *In re Brinker Data Incident Litigation*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. April 14, 2021). In *Brinker* the court ruled that a party's expert could "continue researching and vetting data sources for accurate numbers to use in the final damages calculation" for a putative class. However, the court also found the expert's methodology to be "sufficiently supported by data, reliable, and reliably applied," thus meeting Rule 702's requirements. *Id.* at *3.

The Plaintiffs' argument here incorrectly fuses Rule 702's standard of proof with the showing that they must separately make to prove a common issue. In other words, Rule 702 operates as a threshold requirement that the Plaintiffs must meet before relying on testimony proffered under it to prove a common issue. In fact, the Eleventh Circuit requires District Courts to perform a "full *Daubert* analysis" before certifying a class on the basis of expert testimony. *See Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011). And indeed, it is well-established that a party must meet the qualifications set forth by Rule 702 by a preponderance of the evidence. *E.g.*, *Daubert v. Merrell Dow Pharms.*, Inc.,

509 U.S. 579, 592 n.10 (1993). That is precisely the standard Judge Otazo-Reyes applied. (*See* Order 3.)

### B. Exclusions of Opinions Rendered by AEGI and Dr. Glasgow

The Plaintiffs also argue that Judge Otazo-Reyes misapplied Rule 702 in ruling against their proffered experts, AEGI and Dr. Glasgow.

### A. AEGI

AEGI offered opinions relating to the alleged design defects of Dometic's cooling units. The Plaintiffs say that Judge Otazo-Reyes was wrong to conclude that AEGI's testimony: (1) was based on its testing of only 14 units (*see* Obj. 12-13); and (2) was faulty for failing to test un-used units or incorporate boiler tube stress testing. (*See* Obj. 16-17.)

As to their first disagreement with Judge Otazo-Reyes' ruling, the Plaintiffs argue that she failed to account for the fact that AEGI's conclusions concerning these 14 evaluations come in the context of "over 100 forensic examinations" that AEGI conducted. (*See, e.g.*, Obj. 13.) However, the record is abundantly clear that AEGI's report only references the testing of 14 cooling units:

> Q. And in your report, you discuss AEGI's examination of a total of 14 Dometic cooling units, correct?
>
> A. Correct, and Dometic is aware of many more.
>
> Q. Okay. And those 14 inspections are the only ones discussed in your report, right?
>
> A. That is correct, yes.
>
> Q. And it's your belief that what you saw in these 14 units is sufficient for you to conclude that there's a common defect in the millions of refrigerators made over the last two decades, correct?
>
> A. That's correct, in the context of the over 120 cases that we have had.
>
> Q. Well, talking about these 120 cases, other than the 14, they're not documented anywhere in your report, right?
>
> A. That's — that's correct, but the — we do have the knowledge of the remaining cases that we've done.

(Hr'g Tr. 50:15-51:5, ECF No. 535.)

The fact is that AEGI's additional examinations went undocumented in its report. AEGI produced no "underlying data or documentation such that Dometic or the Court could evaluate" those additional examinations. (Opp. 12,

ECF No. 556.) For that reason, the Court finds no error with Judge Otazo-Reyes' opinion that AEGI's small sample size is "problematic" to the reliability of AEGI's opinion. (Order 4-5; *see also* Hr'g Tr. 131:25-132:3.) The Court also independently notes that the Plaintiffs seem to gloss over the fact that only about half of those "over 100 forensic examinations" were performed on Dometic cooling units (Hr'g Tr. 51:14-17) and that only thirty of those units were physically examined for internal corrosion (Hr'g Tr. 51:18-21).

Next, the Plaintiffs take issue with Judge Otazo-Reyes' evaluation of AEGI's failure to test un-used units or boiler tubes. Although the Plaintiffs are right to argue that AEGI may rely on the work of other experts to support its conclusion, that fact does not remediate the fault Judge Otazo-Reyes found in AEGI's methodology. Plaintiffs advance that Dometic's cooling systems begin to build excess corrosion on the units' first use. (Hr'g Tr. 93:9-12.) However, AEGI only tested units that had already failed. (Hr'g Tr. 63:5-8.)

AEGI's failure to incorporate un-used units in its own studies reflects that AEGI's methods were designed to prove a hypothesis rather than to assess for its fallibility. Such backtracking, as Judge Otazo-Reyes points out, is not indicative of scientific methods that courts look for when admitting expert opinions under Rule 702. And against this backdrop of the AEGI's flawed methodology, the more acute question of whether AEGI needed to also stress test for boiler tube pressure becomes irrelevant. Thus, Judge Otazo-Reyes' order cannot be contrary to law with respect to AEGI.

## B. Dr. Glasgow

Dr. Glasgow offered opinions related to damages. Based on a survey he conducted, Dr. Glasgow opined that the demand for Dometic refrigerators would have substantially fallen had Dometic included a fire warning on its products and that Dometic would adjust its pricing downward by 5.4% as a result. (Order 7, 8.)

"[W]hen assessing the reliability of an expert survey, courts may look to several factors, including whether: the survey population was properly chosen and defined, [and whether] the sample chosen was representative of that population . . . ." *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046-CIV, 2021 WL 4891334, at *7 (S.D. Fla. Sept. 23, 2021) (Scola, J.). Admittedly, "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility." *Cardenas v. Toyota Motor Corp.*, No. 18-CV-22798-CIV-FAM, 2021 WL 6926418, at *20 (S.D. Fla. Aug. 12, 2021) (Louis, Mag. J.) (quoting *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003)). "However, that is not an absolute rule, as a fundamentally flawed

survey may be excluded under Rule 702 or Rule 403." *Native Am. Arts, Inc. v. Bud K World Wide, Inc.*, No. 7:10-CV-124 HL, 2012 WL 1833877, at *6 (M.D. Ga. May 18, 2012); *see also Ass Armor, LLC v. Under Armour, Inc.*, No. 15-CV-20853-CIV, 2016 WL 7156092, at *3 (S.D. Fla. Dec. 8, 2016) (Cooke, J.).

Judge Otazo-Reyes found multiple flaws with Dr. Glasgow's methodology, including that: (1) he surveyed consumers rather than the products' immediate purchasers (i.e. intermediaries); (2) he failed to reflect the way consumers view Dometic refrigerators in the real-world marketplace in testing for demand; (3) he did not rely on a pricing model that accounts for the fact that the vast majority of Dometic's sales stems from intermediaries; (4) he used outdated data from a ten-year old study about production costs for *home* refrigerators; and (5) he relied on markup ratios for dealer-to-consumer sales rather than manufacturer-to-dealer sales, and assumed the markup ratios were the same across the industries. (Order 7-11.)

Analyzing for reliability under *Daubert*, Judge Otazo-Reyes cited to parallel cases such as *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, No. 14-CV-5696, 2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) where the parties presented similar arguments and, among other reasons, a court found a survey unreliable because the expert surveyed consumers rather than intermediary sellers who were the overwhelming majority of a product's purchasers. The Plaintiffs attempt to distinguish that case by noting that Dometic directly advertises to consumers (Obj. 15) but the Court is not convinced. Judge Otazo-Reyes also drew parallel to *Native American Arts*, 2012 WL 1833877, which stands for the premise that surveys must resemble the actual way consumers view products in the marketplace, among other cases. On balance, the Court cannot say that Judge Otazo-Reyes' order is contrary to law given the totality of the flaws she found with Dr. Glasgow's methodology and the support drawn from persuasive case law.

Although Judge Otazo-Reyes found issue with Dr. Glasgow's methodology, the Plaintiffs assert that disagreements with experts' calculations are not enough to warrant exclusion of the same when the experts' "assumptions and estimates are reasonable." (Obj. 18.) However, it is clear from the face of her order that Judge Otazo-Reyes did not find Dr. Glasgow's assumptions and estimates to be reasonable. Thus, the fact that she did not consider the calculations independently does not constitute error.

Additionally, in their reply, the Plaintiffs argue that Judge Otazo-Reyes held Dr. Glasgow's damages model "to a higher evidentiary threshold than is required on class certification." (Reply 13, ECF No. 557). They seem to suggest that the standard is "whether or not the proposed methods for computing damages are so insubstantial as to amount to no method at all." (*Id.*) (quoting

*Klay v. Humana, Inc.*. 382 F.3d 1241, 1259 (11th Cir. 2004)). However, in that portion of the decision in *Klay*, the Eleventh Circuit was not discussing the lens through which courts are to consider the reliability of expert testimony. It was instead discussing the requirements for class certification. The Plaintiffs' argument again confuses the Rule 702 inquiry with the showings required at the pre-certification stage. For these reasons, the Court does not find that Judge Otazo-Reyes' order was contrary to law with respect to Dr. Glasgow.

### 3. Conclusion

This Court's review is a limited and deferential one. Finding Judge Otazo-Reyes' order to be well-reasoned and supported by the law, the Court does not disturb her rulings. The Plaintiffs' objections (**ECF No. 555**) are **overruled**.

**Done and ordered** in Miami, Florida, on April 26, 2022.

Robert N. Scola, Jr.
United States District Judge